IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 16, 2016 Session

J.A.C., BY AND THROUGH HER NEXT FRIEND AND MOTHER, LESHA
CARTER AND LESHA PATRICIA CARTER, INDIVIDUALLY v.
METHODIST HEALTHCARE MEMPHIS HOSPITALS, ET AL.

Appeal from the Circuit Court for Shelby County
No. CT-001882-15  Rhynette N. Hurd, Judge
_____

No. W2016-00024-COA-R3-CV – Filed November 2, 2016
_____

In this health care liability action, Defendants moved to dismiss based on the Plaintiffs' failure to provide the Health Insurance Portability and Accountability Act ("HIPAA") medical authorization required by Tennessee Code Annotated section 29-26-121(a)(2)(E). Based on its determination that the Plaintiffs failed to substantially comply with the foregoing statute, the trial court held that the Plaintiffs were not entitled to an extension of the applicable statutes of limitations and repose under Tennessee Code Annotated section 29-26-121(c) and accordingly concluded that the Plaintiffs' claims were time-barred. The trial court also concluded that the Plaintiffs' constitutional challenges to the viability of Tennessee Code Annotated section 29-26-121 were without merit. We affirm and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Donald Capparella, Nashville, Tennessee, Daniel S. Weinstock, Carolyn M. Chopko, and Scott G. Vezina, Philadelphia, Pennsylvania for the appellants, J.A.C. by and through her Next Friend, and Mother Lesha Patricia Carter, and Lesha Patricia Carter, Individually.

Eugene Podesta and Leslie R. Issacman, Memphis, Tennessee, for the appellees, Methodist Healthcare-Memphis Hospitals and  Methodist Lebonheur Hospital.

Joseph M. Clark and Samantha E. Bennett, Memphis, Tennessee, for the appellees, Bo Charles Li, M. D., and OBGYN Physicians Group of Memphis, PC.

Darrell E. Baker, Jr., Deborah Whitt, and M. Jason Martin, Memphis, Tennessee, for the appellees, Stephen Ehiremen, M.D., and OB/GYN Centers of Memphis, MPLLC.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Laura Miller Assistant Attorney General, for the appellee, State of Tennessee .

## OPINION

### Background and Procedural History[1]

On January 23, 2012, Appellant Lesha Carter ("Ms. Carter") began experiencing lower back and abdominal pain. Ms. Carter was approximately forty weeks pregnant at the time, and after she called 911, paramedics arrived at her home and transported her to Methodist Hospital South. While at the hospital, Ms. Carter's blood pressure was found to be elevated. Although an evaluating physician noted that she was having "irregular" contractions, Ms. Carter was discharged later that evening with instructions to return for a scheduled cesarean delivery on January 25, 2012.

Ms. Carter's water broke the following day, and she went immediately to Methodist Hospital South. She arrived at the hospital shortly before 9:30 p.m., and an obstetrician ordered an emergency cesarean section. Around 9:59 p.m., Ms. Carter's daughter, Jazyhia Carter ("Jazyhia"), was delivered. At the time of delivery, a placental abruption was noted.

Immediately after delivery, there were concerns that Jazyhia was having seizures. She required resuscitation and was transferred to the NICU unit where she was intubated. Hours later, Jazyhia was transferred to Methodist Hospital Germantown, where she remained until February 9, 2012.

On May 1, 2015, Ms. Carter filed a complaint in the Shelby County Circuit Court seeking to recover damages against several health care providers for alleged negligence in connection with her January 23, 2012 visit to Methodist Hospital South. The complaint was brought by Ms. Carter in her individual capacity in addition to her capacity as Jazyhia's parent and natural guardian. Named as defendants were the following individuals and entities: Methodist Healthcare Memphis Hospitals; Methodist Healthcare a/k/a Methodist Le

---

[1] Because this case was dismissed at the motion to dismiss stage, we presume that the allegations of fact in the complaint are true. *See Moses v. Dirghangi*, 430 S.W.3d 371, 379 (Tenn. Ct. App. 2013).

Bonheur Healthcare; Bo Charles Li, M.D.; Stephen Eguabor Ehiremen, M.D.; OB/GYN Centers of Memphis, MPLLC; and OB/GYN Physicians Group of Memphis, P.C. ("Providers"). Among other things, the complaint alleged that Ms. Carter was inappropriately discharged on January 23, 2012 and claimed that she should have been admitted on that date for additional testing, monitoring, and treatment. According to the complaint, Jazyhia sustained severe brain damage that would not have occurred but for the Providers' actions in failing to properly treat Ms. Carter.

In addition to articulating the Plaintiffs' specific grievances with the Providers' actions, the complaint asserted that the Plaintiffs had complied with the pre-suit notice requirements of Tennessee Code Annotated section 29-26-121. Under that statute, "[a]ny person . . . asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint[.]" Tenn. Code Ann. § 29-26-121(a)(1). Specific documentation showing the Plaintiffs' purported compliance with the pre-suit notice requirements was attached to the complaint as an exhibit, including copies of medical authorizations that the Plaintiffs sent to the Providers pursuant to Tennessee Code Annotated section 29-26-121(a)(2)(E). *See id.* § 29-26-121(a)(2)(E) (stating that the pre-suit notice under Tennessee Code Annotated section 29-26-121(a)(1) shall include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice").

The medical authorization forms received by the Providers were identical. Each form contained a heading identifying it as a "HIPAA COMPLIANT AUTHORIZATION FOR THE RELEASE OF PATIENT INFORMATION PURSUANT TO 45 CFR 164.508." The forms were noticeably bare, however, and contained multiple blanks. Save for Ms. Carter's signature and the date, the blanks on the forms were not completed.

Following the commencement of the action, the Providers filed motions to dismiss based on the Plaintiffs' failure to comply with Tennessee Code Annotated section 29-26-121. Namely, the Providers took issue with the Plaintiffs' failure to provide them with a HIPPA compliant authorization form that would enable them to obtain medical records from each other provider being sent pre-suit notice. Included among the Providers' many arguments in support of their motions to dismiss were the following points of contention: (1) the provided authorization forms did not provide a description of the information to be used or disclosed; (2) the authorization forms did not identify the person(s) authorized to make a requested use or disclosure; (3) the authorization forms did not identify the person(s) to whom disclosure could be made; and (4) the authorization forms did not identify the patient whose records were to be released. With respect to this last alleged deficiency, the Providers acknowledged that although the provided forms contained a signature purportedly belonging to Ms. Carter,

there was no description of her authority to act for Jazyhia. Assuming that the forms were offered as authorization for the release of Jazyhia's medical records, such a description of authority would have been necessary. *See* 45 C.F.R. § 164.508(c)(1)(vi) ("If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.").

Because they contended that a HIPAA compliant authorization form had not been provided to them, the Providers argued that the Plaintiffs were not entitled to the benefit of Tennessee Code Annotated section 29-26-121(c). Under that provision, "the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days" when proper pre-suit notice is provided. Tenn. Code Ann. § 29-26-121(c). Without this 120-day extension, the Providers argued that the Plaintiffs' May 1, 2015 complaint was time-barred.

Because the complaint had raised several constitutional issues, including allegations that the Tennessee Health Care Liability Act[2] was unconstitutional, the State of Tennessee filed a motion on June 11, 2015 requesting that it be allowed to intervene in the case as a matter of right. By order entered on July 14, 2015, the trial court granted the State's motion to intervene. A hearing on the Providers' motions to dismiss was subsequently set for October 8, 2015.

Although the Plaintiffs had notice of the October 8, 2015 hearing in August of that same year, they did not file a response to the Providers' motions to dismiss until October 5, 2015. In their October 5 response, the Plaintiffs generally argued that they had sufficiently complied with the requirements of Tennessee Code Annotated section 29-26-121, including the provision of HIPAA compliant medical authorizations. In the alternative, the Plaintiffs argued that any flaws in their pre-suit notices should be excused as a result of extraordinary cause. To support the arguments made in their response, the Plaintiffs attached three affidavits. The first affidavit, belonging to Certified Information System Security Professional Chris Apgar, was offered to show that the Plaintiffs' pre-suit notice letters, along with their attachments, satisfied HIPAA. The second and third affidavits, belonging to attorneys Kevin Hudson and Scott Vezina,[3] respectively, were offered to support the Plaintiffs' position that extraordinary cause should excuse any finding of statutory noncompliance.

---

[2] Tenn. Code Ann. § 29-26-101, *et seq.*

[3] Attorney Kevin Hudson was one of the Plaintiffs' attorneys of record in the trial court. Attorney Scott Vezina was one of the Plaintiffs' attorneys of record in both the trial court and in this Court on appeal; in both the trial court and this Court, attorney Vezina was granted *pro hac vice* admission.

The hearing on the Providers' motions to dismiss took place on October 8, 2015 as scheduled. At the beginning of the hearing, the trial court indicated that it was not going to consider the Plaintiffs' written October 5 response. In addition to deeming the submission to be untimely filed, the trial court stated that the Plaintiffs' response had included documents that were inappropriate for consideration on a motion to dismiss. The trial court did state, however, that it would "listen carefully" to the arguments that were presented at the hearing.

In a written order entered on October 30, 2015, the trial court concluded that the Plaintiffs had failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E). In reaching this determination, the trial court expressly found that the medical authorizations provided were "woefully shy" of what was required. In pertinent part, the trial court noted that the following deficiencies existed: (1) the authorizations did not contain the patient name; (2) the authorizations did not include a description of the information to be used or disclosed; (3) the authorizations did not state who was authorized to disclose records; (4) the authorizations did not state who was entitled to obtain records; and (5) with respect to the claim of Jazyhia, there was nothing in the authorizations that indicated the authority of the signer to authorize the release of Jazyhia's records. In sum, the trial court noted that the authorizations were blank "except for the signature of [Ms. Carter] and the date."

In light of the Plaintiffs' failure to provide a HIPAA compliant authorization to each of the Providers, the trial court concluded that they were not entitled to rely on the 120-day extension in Tennessee Code Annotated section 29-26-121(c). This fact, the trial court explained, resulted in the Plaintiffs' claims being time-barred:

> 11. Because the Plaintiffs failed to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E), Plaintiff Lesha Carter was not entitled to the 120-day extension of the one-year statute of limitations or three-year statute of repose under Tenn. Code Ann. § 29-26-121(c) and Plaintiff Jazyhia Carter was not entitled to the 120-day extension of the three-year statute of repose under Tenn. Code Ann. § 29-26-121(c)[.]
>
> 12. The alleged negligent treatment occurred on January 23, 2012, and the minor child was born on January 24, 2012 with alleged deficits.
>
> 13[.] Pre-suit notice was sent to the Defendants on December 17, 2014 [and on January 5, 2015.]
>
> 14[.] The three-year statute of repose lapsed on January 24, 2015 at the latest.

15. The Plaintiffs filed their Complaint on May 1, 2015, after the lapse of the applicable statute of repose.

16. The Plaintiffs' claims were not filed within the applicable statute of limitations and/or statute of repose and are, therefore, time-barred.

17. The Defendants are entitled to dismissal with prejudice.

Despite its conclusion that the Providers were entitled to dismissal with prejudice, the trial court's October 30, 2015 order did not represent a final judgment. Plaintiffs' constitutional challenges to the validity of Tennessee Code Annotated section 29-26-121 remained to be decided. The trial court would later hold a hearing on the constitutional issues on December 4, 2015, and by order dated December 11, 2015, the trial court rejected the Plaintiffs' constitutional challenges. Incident to its rejection of the Plaintiffs' constitutional claims,[4] the trial court upheld its determination that the Plaintiffs' claims should be dismissed with prejudice. This timely appeal followed.

## Issues Presented

Having reviewed the briefs submitted to us on appeal, we find that the following issues are presented for our review:

1. Whether the trial court erred in refusing to consider the Plaintiffs' written response to the Providers' motions to dismiss.

2. Whether the Plaintiffs' medical authorizations substantially complied with Tennessee Code Annotated section 29-26-121(a)(2)(E).

3. Whether any mistakes in the Plaintiffs' medical authorizations should be excused for extraordinary cause.

4. Whether Tennessee Code Annotated section 29-26-121 is unconstitutional, both facially and as-applied, because it violates the separation of powers doctrine and Open Courts Clause under the Tennessee Constitution, and violates the guarantee of equal protection under both the United States and Tennessee Constitutions.

---

[4] Although the trial court was of the opinion that the Plaintiffs' constitutional challenges were purely facial ones, it concluded that the pre-suit notice requirements of Tennessee Code Annotated section 29-26-121 were constitutional on their face and as-applied to the facts of this case.

5. Whether Tennessee Code Annotated section 29-26-121(a)(2)(E) is preempted by HIPAA and violates the Supremacy Clause of the United States Constitution.

## Standard of Review

Because the trial court's grant of the Providers' motions to dismiss involves a question of law, our review is de novo with no presumption of correctness. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012) (citation omitted). Issues of statutory construction are also reviewed de novo, with no presumption of correctness afforded to the trial court's rulings. *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009) (citation omitted). "[W]hether [Plaintiffs] ha[ve] demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings." *Myers*, 382 S.W.3d at 307 (citation omitted). A court's decision to excuse compliance is reviewed under an abuse of discretion standard. *Id.* at 308.

In addition to reviewing whether the Plaintiffs complied with the applicable requirements of the Tennessee Health Care Liability Act, or whether any noncompliance with those requirements should be excused, we address several presented questions of constitutional concern in this appeal. "Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009) (citation omitted). We will uphold the constitutionality of a statute wherever possible, *State v. Pickett*, 211 S.W.3d 696, 700 (Tenn. 2007) (citations omitted), and when evaluating the constitutionality of a statute, "'we begin with the presumption that an act of the General Assembly is constitutional.'" *Id.* (quoting *Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003) (citing *State v. Robinson*, 29 S.W.3d 476, 479-80 (Tenn. 2000); *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997))). "The presumption of constitutionality applies with even greater force when a party brings a facial challenge to the validity of a statute." *Waters*, 291 S.W.3d at 882 (citation omitted).

## Discussion

*Trial Court's Refusal to Consider the Plaintiffs' Written Response to the Providers' Motions to Dismiss*

We turn first to the Plaintiffs' assertion that the trial court erred in refusing to consider their October 5, 2015 written response to the Providers' motions to dismiss. In addition to

containing arguments as to why their complaint should not be dismissed, the Plaintiffs' October 5 response attached three affidavits. As previously noted, one of these affidavits was offered to show that the medical authorization forms given to the Providers complied with HIPAA. The other two affidavits were offered in support of the Plaintiffs' alternative position that any noncompliance with the requirements of the pre-suit notice statute should be excused for extraordinary cause.

The trial court refused to consider the Plaintiffs' written response, in part, due to its determination that the response was not timely filed.[5] The trial court noted that the Plaintiffs had been aware of the October 8, 2015 hearing date since August of that same year and cited to Rule 6(A) of the Shelby County Circuit Court Local Rules of Practice. Under that rule, written responses to motions to dismiss must be filed and delivered to the trial judge or courtroom clerk "at least ten (10) days before the motion is heard."

On appeal, the Plaintiffs argue that notwithstanding the tardiness of their response under the local rules of practice, the trial court abused its discretion in refusing to consider it. Assuming *arguendo* that the trial court erred in refusing to consider the Plaintiffs' response, we find that such error was harmless. We note than under Rule 36 of the Tennessee Rules of Appellate Procedure, "[a] final judgment . . . shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36. The response itself consisted of legal arguments that were entertained by the trial court at the hearing. As for the trial court's decision not to consider the affidavits attached to the response, we note that these affidavits were not effective for the purposes for which the Plaintiffs desired to submit them. Although the affidavit of Chris Apgar was offered as an expert affidavit to prove that the Plaintiffs' authorization forms satisfied HIPAA, "[t]he content[,] meaning[,] and application of statutes and regulations are not a matter of fact to be proven by the affidavit of an expert witness, but are a matter of law to be presented by brief and argument of counsel supported by citations and authorities." *Dempsey v. Correct Mfg. Corp.*, 755 S.W.2d 798, 806 (Tenn. Ct. App. 1988). Moreover, with respect to those affidavits offered to prove extraordinary cause, we conclude they are similarly unavailing. As will be explained *infra*, even when these affidavits are taken at face value, they fail to attest to circumstances that would warrant a finding of extraordinary cause so as to excuse any noncompliance with Tennessee Code Annotated section 29-26-121(a)(2)(E). Accordingly, there is no reason to disturb the trial court's judgment on account of its failure to consider the Plaintiffs' October 5, 2015 written response and the attachments thereto.

---

[5] The trial court was also of the opinion that the response included documents that were not appropriate for consideration on a motion to dismiss.

*Trial Court's Dismissal of the Plaintiffs' Claims*

We next review the trial court's basis for dismissing the Plaintiffs' case. The trial court determined that the Plaintiffs' claims were time-barred because they "were not filed within the applicable statute of limitations and/or statute of repose." It reached this conclusion by way of a separate determination that the Plaintiffs were not entitled to the 120-day extension under Tennessee Code Annotated section 29-26-121(c). As we have previously noted, when plaintiffs furnish pre-suit notice as directed under Tennessee Code Annotated section 29-26-121, subsection (c) of that statute provides that the applicable limitation and repose periods shall be extended by 120 days. *See* Tenn. Code Ann. § 29-26-121(c). According to the trial court, the 120-day extension was unavailable to the Plaintiffs because they failed to "substantially comply" with the requirement under Tennessee Code Annotated section 29-26-121(a)(2)(E) that they provide a HIPAA compliant authorization with their pre-suit notice.

We agree with the trial court's conclusion that the Plaintiffs' May 1, 2015 complaint would be time-barred absent an extension of the statute of repose pursuant to Tennessee Code Annotated section 29-26-121(c).[6] Here, the complaint was predicated on allegations of negligent medical treatment that occurred on January 23, 2012, but it was not filed until May 1, 2015. Clearly, the complaint was filed outside of the end of the three year repose period applicable to health care liability actions. *See* Tenn. Code Ann. § 29-26-116(a)(3) ("In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.").

---

[6] As the Providers have pointed out in their brief on appeal, Ms. Carter's claims are time-barred by the one year limitation period applicable to health care liability actions, *see* Tenn. Code Ann. § 29-26-116(a)(1), irrespective of the Plaintiffs' compliance, or lack thereof, with the pre-suit notice requirements. Tennessee Code Annotated section 29-26-121(c) only extends the statute of limitations by 120 days. Thus, although our analysis herein focuses on the untimeliness of both Plaintiffs' claims vis-à-vis the applicable statute of repose, it is clear that the statute of limitations bars Ms. Carter's claims regardless. Dismissal based on the statute of limitations is not proper as to Jazyhia, however, as the statute of limitations is tolled during her minority. *See* Tenn. Code Ann. § 28-1-106 ("If the person entitled to commence an action is, at the time the cause of action accrued, either under eighteen (18) years of age, or adjudicated incompetent, such person, or such person's representatives and privies, as the case may be, may commence the action, after legal rights are restored, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from restoration of legal rights."). Jazyhia's minority status does not toll the three year statute of repose applicable to this case, which is set forth in Tennessee Code Annotated section 29-26-116(a)(3). *See Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 514 (Tenn. 2005) ("For cases commenced after December 9, 2005, we hold that the plaintiff's minority does not toll the medical malpractice statute of repose.").

To determine whether the trial court was correct in its determination that the Plaintiffs were not entitled to rely on the 120-day extension under Tennessee Code Annotated section 29-26-121(c), we must consider whether it correctly concluded that the Plaintiffs failed to comply with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E). Pursuant to Tennessee Code Annotated section 29-26-121(a)(2)(E), a health care liability plaintiff's pre-suit notice shall include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E). The specific purpose of subsection (a)(2)(E) is not to provide defendants with notice of a potential claim; rather, as the Tennessee Supreme Court noted in *Stevens ex rel. Stevens v. Hickman Community Health Care Services, Inc.*, 418 S.W.3d 547 (Tenn. 2013), the subsection "serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." *Id.* at 555. "[I]t is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Id.* (citation omitted). Indeed, under Tennessee Code Annotated section 29-26-121(d), "[a]ll parties . . . shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice." Tenn. Code Ann. § 29-26-121(d).

Despite the importance of the HIPAA authorization required by the statute, the Tennessee Supreme Court has held that "[a] plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) . . . should not derail a healthcare liability claim." *Stevens*, 418 S.W.3d at 555. By noting that "[n]on-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records," the Supreme Court concluded in *Stevens* that "a plaintiff must substantially comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E)." *Id.* In determining whether a plaintiff has substantially complied with the statute, "a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id.* at 556. "Not every non-compliant HIPAA medical authorization will result in prejudice." *Id.*

Directing our attention to the facts of this case, we must determine whether the authorization form provided by the Plaintiffs substantially complied with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E). Federal regulations provide that a HIPAA compliant authorization must contain the following elements:

(i)     A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.

(ii)     The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.

(iii)    The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

(iv)     A description of each purpose of the requested use or disclosure. The statement "at the request of the individual" is a sufficient description of the purpose when an individual initiates the authorization and does not, or elects not to, provide a statement of the purpose.

(v)      An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. The statement "end of the research study," "none," or similar language is sufficient if the authorization is for a use or disclosure of protected health information for research, including for the creation and maintenance of a research database or research repository.

(vi)     Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1).

In this case, the authorization forms given to the Providers were markedly inadequate. They did not satisfy the express requirement of the statute that the plaintiff's medical authorization "permit[] the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E); *see Stevens*, 418 S.W.3d at 556 (noting that, because the plaintiff's medical authorization permitted disclosure only to plaintiff's counsel, the express requirement of section 29-26-121(a)(2)(E) was not satisfied). Indeed, the provided forms did not actually authorize or facilitate any disclosure. The forms did not list any person(s), or class of persons, that were authorized to disclose protected health information. Moreover, the forms did not list any person(s), or class of persons, to whom a disclosure of information could be made. The forms merely contained blanks where this information was to be presented. Although the forms also contained blanks where the patient authorizing disclosure was to be identified, the forms did appear to contain the signature of Ms. Carter. Notably, however, Ms. Carter did not designate that she was signing the forms on behalf of Jazyhia. This is significant, because as already noted, assuming that the forms were offered as authorization for the release of Jazyhia's medical records, such a description of authority would have been necessary. *See* 45 C.F.R. § 164.508(c)(1)(vi) ("If the authorization is signed by a personal

representative of the individual, a description of such representative's authority to act for the individual must also be provided.").

Given these deficiencies,[7] the authorizations were clearly ineffective to allow the Providers to receive medical records from one another. The authorizations did not even purport to release Jazyhia's records as her name was listed nowhere on the forms. As the authorizations failed to satisfy the express requirement of the statute that they "permit[] the provider receiving the notice to obtain complete medical records from each other provider being sent a notice," Tenn. Code Ann. § 29-26-121(a)(2)(E), we are compelled to uphold the trial court's conclusion that the Plaintiffs failed to substantially comply with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E). As such, we find no error in its conclusion that the Plaintiffs' claims were time-barred. Due to the Plaintiffs' substantial noncompliance, the trial court was correct in determining that the 120-day extension of the statute of limitations and statute of repose provided by Tennessee Code Annotated section 29-26-121(c) was unavailable.

In affirming the trial court's conclusion that the Plaintiffs failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E), we have necessarily rejected the Plaintiffs' contention that the authorization forms were sufficient when considered alongside the pre-suit notice letters that accompanied the forms. According to the Plaintiffs, the Providers could have used the information in the pre-suit notice letters and in the attachments thereto to "customize the medical authorizations for their own use." We

---

[7] In addition to the concerns that we have specifically discussed herein, we note that the Providers assert that the authorization forms fail to describe the information to be used or disclosed. We certainly agree with the Providers to the extent that their argument is predicated on the fact that the forms do not identify Jazyhia as a patient who is requesting a release of records. Without identification of the patient, how can a health care provider know which records are to be released? The Providers also assert, however, that the forms contain an inadequate description of the "type" of records to be disclosed. The Providers note that the forms request disclosure of all records and then contain a statement requesting disclosure of "full and complete protected medical information including the following[.]" However, they note that these statements are then followed by a list of seven categories of information, with each category being presented next to an unchecked box. The first category of information specifically provides for disclosure of "[a]ll medical records, meaning every page in my record[.]" Admittedly, the forms are somewhat unusual in that there are boxes that one might suspect should be checked, but the Plaintiffs note that the forms contain no limiting language suggesting that any box needed to be checked in order for the records to be disclosed. Moreover, the prefatory language that appears above the unchecked boxes authorizes disclosure of "all protected information" and "full and complete protected medical information [.]" It is not wholly unreasonable, as the Plaintiffs have submitted, to conclude that the language of the forms authorizes all records to be disclosed without any limitation. Of course, such a description is only meaningful to the extent that the authorizations provide for the release of records of a particular, identifiable patient. In any event, regardless of whether the "type" of information to be disclosed was adequately described by the forms, the other deficiencies are significant enough to prevent the forms from actually authorizing disclosure.

need not tarry long with this argument. Several Tennessee decisions have rejected the proposition that a health care liability defendant has a duty to assist a plaintiff achieve compliance or to test whether an obviously deficient HIPAA form would allow the release of records. *See, e.g.*, *Stevens*, 418 S.W.3d at 559 ("Plaintiff—not Defendants—was responsible for complying with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E)."); *Dolman v. Donovan*, No. W2015-00392-COA-R3-CV, 2015 WL 9315565, at \*5 (Tenn. Ct. App. Dec. 23, 2015) (rejecting the plaintiffs' argument that the medical providers could not have been prejudiced because they never attempted to obtain medical records with the deficient medical authorization provided), *perm. app. denied* (Tenn. May 6, 2016). Similarly, our courts have rejected the notion that a health care liability defendant needs to inform a plaintiff that the provided authorization form is deficient before filing a motion to dismiss. *Stevens*, 418 S.W.3d at 559; *Vaughn v. Mountain States Health Alliance*, No. E2012-01042-COA-R3-CV, 2013 WL 817032, at \*4 (Tenn. Ct. App. Mar. 5, 2013) (rejecting the argument that the defendants should have contacted plaintiff's counsel prior to an action being filed against them in order to inform plaintiff's counsel that the requirements of Tennessee Code Annotated section 29-26-121 had not been met), *overruled on other grounds by Davis v. Ibach*, 465 S.W.3d 570 (Tenn. 2015).

The argument that a health care liability defendant should complete or "customize" a medical authorization that contains blanks has been specifically rejected by two recent decisions of this Court. In *Roberts v. Prill*, No. E2013-02202-COA-R3-CV, 2014 WL 2921930 (Tenn. Ct. App. June 26, 2014), the plaintiff admitted that she intentionally left portions of the HIPAA form blank and anticipated that the defendant medical providers would fill it in. *Id.* at \*6. In summarizing the crux of the plaintiff's argument as to why her complaint should not be dismissed despite the presence of an incomplete form, we noted as follows: "She essentially argues that the onus should be placed on Defendants to test the sufficiency of the form or even to complete an inadequate form." *Id.* We rejected the plaintiff's argument and noted as we had in *Stevens* that it is the health care liability plaintiff, not defendant, that is responsible for complying with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E). *Id.* (citation omitted).

We also had occasion to address this issue in *Bray v. Khuri*, No. W2015-00397-COA-R3-CV, 2015 WL 7775316 (Tenn. Ct. App. Dec. 3, 2015), *perm. app. granted* (Tenn. June 23, 2016).[8] Upon our review of the record in *Bray*, we determined that the plaintiff's HIPAA

---

[8] The order granting permission to appeal in *Bray* was non-specific as to which issues our Supreme Court desired to address in the Tenn. R. App. P. 11 appeal. The appeal is still pending. In *Bray*, this Court addressed two primary issues. First, we examined whether a HIPAA compliant medical authorization was required when there was only a single medical provider that received pre-suit notice. *Bray*, 2015 WL 7775316, at \*3. After answering this question in the affirmative, we proceeded to analyze whether the authorization provided by the plaintiff substantially complied with the statute. *See id.* at \*3-4.

authorization form "left blank the portion of the . . . form describing the type and amount of information to be used." *Id.* at *4. Although the plaintiff argued that the accompanying pre-suit notice letter authorized the defendant to fill in the blank with the necessary information, we rejected this argument. First, we noted that nothing in the notice letter explicitly authorized the defendant to make any changes to the authorization. *Id.* Second, we noted that the defendant was not responsible for producing a HIPAA compliant authorization form, as the plaintiff was the party statutorily charged with such a duty. *See id.* (citation omitted).

We know of no authority permitting the Providers to alter the authorization forms that were already given to them.[9] Moreover, as we have noted, it was incumbent upon the Plaintiffs to achieve substantial compliance with Tennessee Code Annotated section 29-26-121(a)(2)(E). The Providers owed no duty to the Plaintiffs to help them achieve this standard. The Plaintiffs' argument that the Providers should have customized the forms given to them is accordingly rejected.

*Propriety of Excusing the Plaintiffs' Non-Compliance for Extraordinary Cause*

Under Tennessee Code Annotated section 29-26-121(b), the "court has discretion to excuse compliance [with the pre-suit notice requirements] . . . for extraordinary cause shown." Tenn. Code Ann. § 29-26-121(b). As previously noted, "whether [Plaintiffs] ha[ve] demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings." *Myers*, 382 S.W.3d at 307 (citation omitted). This Court reviews a trial

---

[9] In support of their argument that the Providers could have used the pre-suit notice letters alongside the authorization forms to achieve compliance with Tennessee Code Annotated section 29-26-121(a)(2)(E), the Plaintiffs reference a question and answer section that apparently appeared on the United States Department of Health & Human Services website. Even assuming that the referenced material was somehow controlling on this Court, we agree with the Providers that it does not stand for the proposition that the Plaintiffs claim it does. The referenced question states as follows: "Can an Authorization be used together with other written instructions from the intended recipient of the information?" The answer indicates that "[a] transmittal or cover letter can be used to narrow or provide specifics about a request for protected health information as described in an Authorization, but it cannot expand the scope of the Authorization." In illustrating this principle, the answer notes that in a case where an individual had authorized the disclosure of "all medical records" to an insurance company, the insurance company could use a cover letter to narrow the request to medical records for the previous twelve months. Clearly, the answer presupposes the existence of a valid authorization; moreover, it speaks to the ability of the intended recipients of the protected information—in our case, the Providers—to narrow the scope of records they seek to get pursuant to a valid HIPAA release. The referenced material does not support the Plaintiffs' argument that the non-compliant HIPAA forms in this case could have been customized and altered by the Providers.

court's decision to excuse compliance under an abuse of discretion standard. *Id.* at 308. A trial court abuses its discretion when it "'applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party.'" *Id.* (quoting *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn. 2012) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011))). "If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative." *Harmon v. Shore*, No. M2014-01339-COA-R3-CV, 2015 WL 1881467, at *4 (Tenn. Ct. App. Apr. 23, 2015) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)), *perm. app. denied* (Tenn. Sept. 16, 2015).

In their appellate brief, the Plaintiffs argue that the trial court abused its discretion because it did not even consider their extraordinary cause claim. Although it is true that the trial court did not consider the two affidavits that the Plaintiffs submitted on the extraordinary cause issue, it is incorrect to suggest that the trial court did not entertain the defense. The trial court did not restrict the Plaintiffs' arguments at the October 8, 2015 hearing, and the transcript from that proceeding indicates that the Plaintiffs' counsel specifically argued extraordinary cause.[10] We agree with the Providers that the trial court implicitly rejected the notion that extraordinary cause existed when it dismissed the Plaintiffs' claims with prejudice.

We are also of the opinion that the trial court committed no error in failing to find that extraordinary cause existed. None of the arguments presented at the October 8, 2015 hearing rise to the level of extraordinary cause, nor do any of the facts that were presented in the affidavits that the Plaintiffs attached to their response to the Providers' motions to dismiss.[11] Although the Plaintiffs' oral arguments at the October 8 hearing largely overlapped with those presented in the affidavits, we will address them in turn.

At the hearing on the Providers' motions to dismiss, the Plaintiffs' counsel argued that the Plaintiffs could not have anticipated that a HIPAA compliant authorization could not be established by piecing the pre-suit notice letters together with partially blank authorization forms. In supporting this position, the Plaintiffs' counsel alluded to a question and answer section that apparently appeared on the United States Department of Health & Human Services website, representing as follows: "And what the [Department of Health & Human

---

[10] The transcript from the hearing on the Providers' motions to dismiss was attached to the trial court's October 30, 2015 order. It was also attached to the trial court's December 11, 2015 order.

[11] Thus, as we noted earlier in this Opinion, even if we assumed that the trial court erred in refusing to consider the two affidavits that the Plaintiffs submitted on the extraordinary cause issue, any such error was harmless. Again, these affidavits did not attest to any facts that would constitute extraordinary cause.

Services] website tells us, and this is undisputed, is that a HIPAA authorization can be utilized in conjunction with a cover letter that is more specific. It can narrow or clarify the instruction. That's what we've done." As counsel noted, "You read [the Department of Health & Human Services website], you think it's okay. You follow the practice that's done nationally, you think it's okay."

Although what constitutes extraordinary cause is not defined under the statute, our Supreme Court has noted that there is no indication that the General Assembly intended to assign a meaning to that phrase other than its ordinary and plain meaning:

> "Extraordinary" is commonly defined as "going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." *Webster's New World Dictionary of the American Language,* 516 (1966); *see also State v. Vikre,* 86 N.C.App. 196, 356 S.E.2d 802, 804 (1987) (adopting dictionary definition of extraordinary cause as "going beyond what is usual, regular, common, or customary ... of, relating to, or having the nature of an occurrence or risk of a kind other than what ordinary experience or prudence would foresee"). One legal scholar, commenting on Tennessee Code Annotated sections 29–26–121 and 122, has noted that possible examples of "extraordinary cause" might include "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary."

*Myers*, 382 S.W.3d at 310–11.

Here, the Plaintiffs' proffered excuse relates solely to their claimed ignorance as to what was necessary to comply with the statute. This explanation does not justify a finding of extraordinary cause. *See DePue v. Schroeder*, No. E2010-00504-COA-R9-CV, 2011 WL 538865, at *8 (Tenn. Ct. App. Feb. 15, 2011) ("Plaintiffs' counsel's action in filing the complaint before expiration of the required notice period was not shown to be the result of any 'extraordinary cause' other than pure oversight/misunderstanding on her part."). Moreover, as we have already pointed out in footnote nine of this Opinion, the Plaintiffs' claimed reliance on the material appearing on the Department of Health & Human Services website is misplaced. According to the referenced web page, an intended recipient of protected health information can use a cover letter to narrow a request for information that is available to be released pursuant to a HIPAA authorization. That is, a party who received an authorization allowing the release of "all medical records" to them could use a cover letter to seek a more narrow scope of release, such as records for the previous twelve months. Thus, even assuming that the material referenced by the Plaintiffs was authoritative, the web page does not suggest that the Plaintiffs could cobble together pre-suit notice in the manner that

they have suggested. At the time that the Plaintiffs sent the authorization forms in this case, the law was clear that it was the plaintiff's responsibility, not the defendant's, to achieve compliance with the pre-suit notice provisions of Tennessee Code Annotated section 29-26-121. *See, e.g.*, *Stevens*, 418 S.W.3d at 559 ("Plaintiff—not Defendants—was responsible for complying with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E)."). Moreover, several months prior to the time that the Plaintiffs sent the medical authorization forms to the Providers, this Court had rejected the notion that a health care liability defendant should fill-in an incomplete HIPAA authorization. *See Roberts*, 2014 WL 2921930, at *6 ("Plaintiff admits that she intentionally left sections of the form blank and anticipated that Defendants would fill in the form. She essentially argues that the onus should be placed on Defendants . . . to complete an inadequate form. Plaintiff's argument is akin to the argument rejected by the Court in *Stevens*[.]"). In short, the claimed reliance on the Department of Health & Human Services website does not present a basis for finding extraordinary cause.

Similarly, the affidavits that the Plaintiffs submitted on the extraordinary cause issue do not present a basis for relieving the Plaintiffs from the consequences of their noncompliance. The affidavits of Kevin Hudson and Scott Vezina both spoke to their respective expectations that the Providers would be able to obtain records by using the incomplete HIPAA forms with the pre-suit notice letters. Moreover, attorney Scott Vezina specifically attested to his experience with Florida medical malpractice cases where defense attorneys had "been able to use the notice letter in combination with a signed but not fully filled out HIPAA authorization . . . to obtain medical records." These representations, even when taken at face value, do not support a finding of extraordinary cause. Again, it should have been clear under well-settled Tennessee law that it is the health care liability plaintiff, not the defendant, that is responsible for creating compliance with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E). Plaintiffs bore the responsibility of furnishing Providers a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E). Plaintiffs failed to fulfill this duty, and the record presents no facts indicating that their failure to do so was due to any extraordinary cause.

*Plaintiffs' Constitutional Challenges*

We last address the Plaintiffs' assertion that Tennessee Code Annotated section 29-26-121 is unconstitutional. In their brief on appeal, the Plaintiffs attack the constitutionality of the statute on several fronts. They argue that it violates the separation of powers doctrine and the Open Courts Clause under the Tennessee Constitution, as well as the guarantee of equal protection under both the United States and Tennessee Constitutions. Moreover, they

- 17 -

contend that Tennessee Code Annotated section 29-26-121(a)(2)(E) is preempted by HIPAA. We, like the trial court, find no merit in any of these arguments.

In addressing the presented constitutional challenges, we first consider the Plaintiffs' argument that the statute runs afoul of the separation of powers doctrine. Under the Tennessee Constitution, the encroachment by one department upon the powers or functions of another is forbidden. *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 453 (Tenn. 1995) (citations omitted). Although this separation of powers is a fundamental principle of our government, "it has long been recognized that it is impossible to preserve perfectly the theoretical lines of demarcation between the executive, legislative[,] and judicial branches of government." *Underwood v. State*, 529 S.W.2d 45, 47 (Tenn. 1975) (citations omitted). As the three departments are interdependent, there will "necessarily [be] a certain amount of overlapping." *Id.*

In advancing their separation of powers argument, the Plaintiffs raise several points of contention. They assert that the medical authorization requirement of Tennessee Code Annotated section 29-26-121(a)(2)(E) interferes with the adjudicative process and state that it conflicts with Rules 3 and 15 of the Tennessee Rules of Civil Procedure.[12] We fail to find any merit in the Plaintiffs' positions. The medical authorization requirement does not frustrate the adjudicative function of the courts. It does not restrict the courts' power to determine questions of fact or law, nor does it direct courts to consider what evidence is relevant. *See State v. Mallard*, 40 S.W.3d 473, 483 (Tenn. 2001) (outlining the inherent judicial powers). Such matters properly remain within the province of the judiciary. Moreover, we note that noncompliance with the medical authorization requirement of Tennessee Code Annotated section 29-26-121(a)(2)(E) can be excused *by the courts* for extraordinary cause. *See* Tenn. Code Ann. § 29-26-121(b).

The medical authorization requirement merely imposes a step to be taken before the commencement of an action.[13] It does not, however, conflict with Rule 3 of the Tennessee Rules of Civil Procedure or serve as an affront to the Supreme Court's authority to promulgate rules governing procedure. We previously rejected such an argument in *Webb v.*

---

[12] Rule 3 provides that "[a]ll civil actions are commenced by filing a complaint with the clerk of the court." Tenn. R. Civ. P. 3. Rule 15 provides that leave to amend pleadings "shall be freely given when justice so requires." Tenn. R. Civ. P. 15.

[13] As a general matter, we note that nothing in Tennessee Code Annotated section 29-26-121 actually prohibits a health care liability plaintiff from commencing an action in the absence of satisfying the applicable pre-suit notice requirements. Noncompliance will, however, potentially subject a properly commenced complaint to dismissal.

*Roberson*, No. W2012-01230-COA-R9-CV, 2013 WL 1645713 (Tenn. Ct. App. Apr. 17, 2013), *perm. app. denied* (Tenn. Dec. 23, 2013), noting as follows:

> [W]e find no conflict between section 29-26-121 and Civil Procedure Rule 3 to constitute an impermissible encroachment upon the court's rule-making authority. . . . [S]ection 29-26-121 requires that written notice of a potential health care liability claim be given *"before the filing of a complaint."* Thus, the statute's pre-suit notice requirements are satisfied—or not—before suit is commenced pursuant to Rule 3 by the filing of the complaint. *See Rajvongs v. Wright*, No. M2011-01889-COA-R9-CV, 2012 WL 2308563, at *5 (Tenn. Ct. App. June 18, 2012) (holding that a suit is "commenced" upon the filing of the complaint, *not* upon the filing of the sixty-day notice) *perm. app. granted* (Tenn. Sept. 19, 2012). Once suit is commenced, *if* the pre-suit notice requirements are demonstrably not met, the complaint is subject to dismissal *by the courts* absent "extraordinary cause" which is, likewise, determined *by the courts*.

*Id.* at * 9. We concluded in *Webb* that "the pre-suit notice requirements of section 29-26-121 merely supplement Rule 3 and can be harmoniously construed therewith[.]" *Id.* Although our conclusions on this issue addressed the pre-suit notice requirements in general terms rather than section 29-26-121(a)(2)(E) specifically, we agree with the State's argument that "there is no reason to conclude that the medical-authorization requirement of the statute conflicts with Tenn. R. Civ. P. 3 while the other notice requirements do not." Again, the commencement of an action remains unimpeded; the requirement of Tennessee Code Annotated section 29-26-121(a)(2)(E) is either satisfied—or not—before the filing of the complaint.

We also reject the Plaintiffs' contention that the medical authorization requirement cannot be reconciled with Rule 15 of the Tennessee Rules of Civil Procedure. The pre-suit notice requirements outlined in Tennessee Code Annotated section 29-26-121 in no way alter the procedure for amending pleadings under Rule 15. Rule 15 simply does not apply. *See Shockley v. Mental Health Coop., Inc.*, 429 S.W.3d 582, 592 (Tenn. Ct. App. 2013) ("[W]e cannot conclude, as a matter of law, that pre-suit notice is a 'pleading' . . . as it is a requirement that precipitates the filing of the complaint.") Rule 15 is not impacted by Tennessee Code Annotated section 29-26-121. Parties may still amend pleadings once an action has been commenced. Again, compliance with the medical authorization requirement and the other pre-suit notice requirements occurs prior to commencement.

We next consider the Plaintiffs' argument that the pre-suit notice requirements in Tennessee Code Annotated section 29-26-121, and the medical authorization requirement in

particular, violate the Open Courts Clause of the Tennessee Constitution. Article 1, Section 17 of the Tennessee Constitution, which contains the Open Courts Clause, reads in relevant part as follows:

> That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.

Tenn. Const. art. 1, § 17.

The Tennessee Supreme Court has interpreted this section of our Constitution "as a mandate to the judiciary and not as a limitation upon the legislature." *See Harrison v. Schrader*, 569 S.W.2d 822, 827 (Tenn. 1978). Moreover, we note that in *Webb*, this Court rejected the notion that Tennessee Code Annotated section 29-26-121 runs afoul of the Open Courts Clause. In pertinent part, we stated as follows:

> The right to court access is not absolute. Instead,
>
>> [t]he constitutional guaranty providing for open courts and insuring a remedy for injuries does not guaranty a remedy for every species of injury, but applies only to such injuries as constitute violations of established law of which the courts can properly take cognizance.
>
> *Id.* (quoting *Barnes v. Kyle,* 202 Tenn. 529, 535–36, 306 S.W.2d 1, 4 (1957)).
>
>> Thus, the courts are open only to those who suffer injuries as defined by the constitution, statute, or common law. Thus, if the legislature chooses to classify some damage outside the realm of "legal injury," it may do so, as long as no other constitutional provision is violated. That is what is meant by the statement that Article I, section 17 is a mandate to the judiciary and not the legislature. The legislature may limit access to the courts, but the judiciary may not.
>
> *Stutts v. Ford Motor Co.,* 574 F.Supp. 100, 103 (M.D.Tenn.1983) (citing *Barnes,* 202 Tenn. 529, 306 S.W.2d 1).
>
> * * * *
>
> In the instant case, Plaintiffs take issue with section 29–26–121's requirement that written pre-suit notice of the potential health care liability claim be given within the original statute of limitations, without provision for extension. As

was explained in the cases cited above, however, the legislature has the inherent authority to set the parameters under which a cause of action accrues and is abolished; in enacting section 29–26–121, it crafted an affirmative defense for failure to comply with the pre-suit notice requirements. Because the Open Courts Clause "applies only to such injuries as constitute violations of established law of which the courts can properly take cognizance[,]" *Harrison,* 569 S.W.2d at 827, we find that Plaintiffs may not successfully invoke the clause to challenge section 29–26–121, nor to insist that section 29–26–121 be analyzed under strict scrutiny.

*Webb*, 2013 WL 1645713, at *15–16. Requiring a HIPAA compliant medical authorization to accompany the pre-suit notice was a policy decision by the General Assembly that "equip[s] defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." *Stevens*, 418 S.W.3d at 555. The requirement does not prevent health care liability plaintiffs from having their rights judicially determined, and as we have noted, the Open Courts Clause has not been interpreted as a limitation upon the General Assembly. *Harrison*, 569 S.W.2d at 827. We accordingly reject the assertion that the medical authorization requirement in Tennessee Code Annotated section 29-26-121(a)(2)(E) unconstitutionally infringes on plaintiffs' access to the courts.

We note that this Court's *Webb* decision also addressed the general equal protection and preemption arguments that have been raised by the Plaintiffs in this appeal. In addressing whether Tennessee Code Annotated section 29-26-121 violated the guarantees of equal protection under the Tennessee and United States Constitutions, we explained that legislative classifications that do not interfere with a fundamental right or disadvantage a suspect class are subject to a rational basis test. *Webb*, 2013 WL 1645713, at *16. Under this standard, a classification is upheld if the reasonableness of the class is fairly debatable or if any state of facts can reasonably be conceived to justify it. *Id.* (citations omitted). A classification is not unconstitutional merely because it results in some inequality. *Harrison*, 569 S.W.2d at 825.

The Plaintiffs admit that the pre-suit notice requirements are subject to a rational basis test, but they assert that the statute does not satisfy this more lenient standard of judicial review. In *Webb*, this Court rejected the notion that no rational basis existed for imposing pre-suit notice requirements upon a health care liability plaintiff, while not imposing such requirements on a non-health care liability plaintiff. *Webb*, 2013 WL 1645713, at *17. We found that the General Assembly "could conceive of a relationship between section 29–26–121's pre-suit notice requirements and its legislative objectives of preventing protracted litigation through early investigation, and possibly, facilitating early resolution through settlement." *Id.* at *19 (citation omitted). We noted that these objectives were of "particular

- 21 -

importance" in the context of health care liability claims, given the threat that increased malpractice insurance costs posed to health care affordability and accessibility. *Id.* There is no reason to contradict our reasoning from *Webb* on this issue.

Our decision in *Webb* also directly addressed the issue of whether Tennessee Code Annotated section 29-26-121 is preempted by HIPAA. In rejecting the notion that HIPAA preempted the health care liability pre-suit notice requirements, we stated as follows:

> We simply cannot agree with Plaintiffs' position that section 29–26–121 allows for the release of protected health information without either a court order or the patient's consent, in violation of HIPAA. By pursuing a malpractice claim, the plaintiff consents to the disclosure of relevant medical information. *See, e.g., Holman v. Rasak,* 785 N.W.2d 98,106 (Mich. 2010) ("The HIPAA regulations were 'not intended to disrupt the current practice whereby an individual who is a party to a proceeding and has put his or her medical condition at issue will not prevail without consenting to the production of his or her protected health information.' ") (quoting 65 Fed.Reg. 82462–01, 82530 (December 28, 2000) discussing 45 C.F.R. § 164.512(e)) (footnote omitted). Moreover, HIPAA expressly provides that protected health information may be released, in the context of a judicial proceeding, in response to lawful process *where the subject of the protected information is notified of the information request.* 45 C.F.R. § 164.512(e)(1)(ii)(A) (emphasis added). Certainly, the plaintiff, who, in the pursuit of his claim has authorized the release of his medical records, is aware of the information request. Notwithstanding this consent, however, HIPAA protection is not waived by the pursuit of a malpractice claim. As pointed out by Defendants, section 29–26–121 specifically demands that the claimant's authorization to release medical records be "HIPAA compl[ia]nt[,]" it limits the discoverable medical records to those held by providers sent notice by the claimant, and it requires the records be treated as confidential and be used only by the parties, their counsel, and their consultants. Tenn. Code Ann. § 29–26–121(a)(2)(E), (d)(2).

*Webb*, 2013 WL 1645713, at \*14 (internal footnote omitted). The Tennessee Supreme Court has also opined on the HIPAA preemption issue. Several months after our decision in *Webb*, the Supreme Court specifically held that "[the medical authorization requirement of] Tenn. Code Ann. § 29-26-121(a)(2)(E) neither conflicts with HIPAA nor stands as an obstacle to the accomplishment of HIPAA's full purposes and objectives." *Stevens*, 418 S.W.3d at 558.

In this case, the Plaintiffs maintain that the trial court's interpretation of Tennessee Code Annotated section 29-26-121 irreconcilably conflicts with HIPAA inasmuch as the trial court did not consider there to be compliance with Tennessee Code Annotated section 29-26-121(a)(2)(E). As detailed earlier, the Plaintiffs posit that it is permissible to read a cover letter in conjunction with an otherwise incomplete authorization form in order to satisfy the statute. We have rejected this argument for the reasons stated previously, and we note that subsection 29-26-121(a)(2)(E) specifically calls for a "HIPAA compliant medical authorization." Tenn. Code Ann. § 29-26-121(a)(2)(E). Even if we concluded that our interpretation of Tennessee Code Annotated section 29-26-121 was somehow stricter than HIPAA, it does not mean that the statute would be preempted. Under the federal regulations, there is no preemption if "[t]he provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter." 45 C.F.R. § 160.203(b). Again, however, we specifically conclude that the Plaintiffs ran afoul of subsection 29-26-121(a)(2)(E) because they did not fulfill what *HIPAA* requires.

In their brief on appeal, the Plaintiffs purport to raise as-applied constitutional challenges in addition to their assertions that Tennessee Code Annotated section 29-26-121 is facially infirm. Having reviewed the Plaintiffs' brief, we have had some difficulty discerning the exact nature of their as-applied challenges. We note that the trial court also had difficulty in determining whether any as-applied challenges had been made in the proceedings before it. In a footnote to its December 11, 2015 order, the trial court stated as follows:

> At the December 4, 2015 hearing, Plaintiffs' counsel represented to the Court that the Plaintiffs were asserting both a facial challenge and an as-applied challenge to the constitutionality of the pre-suit notice requirements of Tenn[.] Code Ann[.] § 29-26-121[.] The Court commented that the Plaintiffs' brief argued only a facial challenge of the statute. While the Court is of the opinion that the Plaintiffs' constitutional challenge was a purely facial challenge, to the extent that any of the challenges could be interpreted as as-applied challenges, the Court finds the pre-suit notice requirements constitutional on its face and as applied to the facts of this case[.]

As best as we are able to discern, the Plaintiffs' as-applied challenges focus on the perceived unfairness of the fact that their complaint was dismissed with prejudice for failure to provide a sufficient authorization form. We note that the Plaintiffs' claims were dismissed with prejudice because they did not satisfy the applicable statute of limitations and statute of repose. As previously explained, this result was partially attributable to the Plaintiffs' failure to receive the benefit of the 120-day extension outlined in Tennessee Code Annotated section 29-26-121(c). Had the Plaintiffs filed their complaint timely without a need for reliance on

- 23 -

the 120-day extension, we note that dismissal with prejudice was not mandated. *See Stevens*, 418 S.W.3d at 560 ("If the legislature had intended to punish a plaintiff's failure to comply with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E) by requiring courts to dismiss all such cases with prejudice, the legislature could easily have done so, as it did in Tenn. Code Ann. § 29-26-122."). Moreover, we note that this Court has previously rejected that notion that the statute could be rendered unconstitutional simply because a plaintiff's failure to follow the pre-suit notice requirements warrants dismissal. *See Webb*, 2013 WL 1645713, at *10 ("[W]e simply decline to adopt Plaintiffs' premise that subjecting a plaintiff's claim to dismissal—for failure to follow reasonable pre-suit requirements—renders a statute unconstitutional."). Finally, whereas the Plaintiffs consistently complain about the fact that they are not afforded the opportunity to amend their authorizations prior to dismissal, we agree with the Providers that such a question is one of policy. Thus, it does not present a basis for declaring the statute unconstitutional. *See Bozeman v. Barker*, 571 S.W.2d 279, 282 (Tenn. 1978) (noting that the acts of the Legislature will not be held unconstitutional merely for reasons of policy).

## Conclusion

For the foregoing reasons, we affirm the trial court's dismissal of the Plaintiffs' claims. Costs of this appeal are assessed against the Appellant Lesha Carter, and her surety, for which execution may issue if necessary. This case is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE