FILED
07/05/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 16, 2018 Session

## DESIREE DAWN ROBERTS ET AL. V. WELLMONT HEALTH SYSTEM ET AL.[1]

**Interlocutory Appeal from the Law Court for Sullivan County**
**No. C41621(C)      E. G. Moody, Judge**

_____

**No. E2017-00845-COA-R9-CV**

_____

This interlocutory appeal involves a health care liability action. Plaintiff gave written pre-suit notice of her claim to all potential defendants. *See* Tenn. Code Ann. § 29-26-121(c) (Supp. 2013). Later, she filed a complaint against the same defendants. In doing so, she relied upon the 120-day extension of the one-year statute of limitation as provided for in Tenn. Code Ann. § 29-26-121(c). Each defendant filed a motion to dismiss. Prior to a hearing on those motions, plaintiff voluntarily dismissed her complaint. Plaintiff subsequently served each defendant with new pre-suit notice and later re-filed her complaint in reliance on the one-year savings statute, Tenn. Code Ann. § 28-1-105, and the 120-day extension pursuant to § 29-26-121(c). Defendants moved to dismiss the second complaint. The trial court denied defendants' motions. In doing so, the court took "judicial notice" of the practice of some attorneys in the Second Judicial District of providing their adversaries with "blank" authorizations. The court ultimately held that the medical authorizations in the first pre-suit notice were not only HIPAA compliant, but "overly" so. The trial court concluded that, because the first pre-suit notice was, according to the court, valid, the first-filed complaint was timely filed. Upon the request of the defendants, the court granted them permission to pursue an interlocutory appeal pursuant to the provisions of Tenn. R. App. P. 9. We likewise granted defendants permission to file a Rule 9 discretionary appeal. We reverse the judgment of the trial court and dismiss the plaintiff's suit with full prejudice.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Law Court**
**Reversed; Case Remanded with Instructions**

---

[1] Because of some common issues, this case was consolidated with the case of ***Smith v. Wellmont Health System et al.***, E2017-00850-COA-R9-CV for the sole purpose of oral argument.

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Jimmie C. Miller and Meredith B. Humbert, Kingsport, Tennessee, for the appellants, Northeast Tennessee Emergency Physicians, P.C. and Dr. Benjamin Altman, M.D.

Russell W. Adkins and Andrew T. Wampler, Kingsport, Tennessee, for the appellant, Wellmont Health System and Wellmont Health System, d/b/a Wellmont Holston Valley Medical Center.

R. Wayne Culbertson, Kingsport, Tennessee, for the appellee, Desiree Dawn Roberts, Administratrix of the Estate of Jeffrey Lynn Roberts.

**OPINION**

**I.**

The health care liability action at issue was based upon an incident that occurred on or about June 7, 2013. Pre-suit notice was provided to the defendants on June 2, 2014. Under Tenn. Code Ann. § 29-26-121, a plaintiff is allowed to file his suit within 120 days of the expiration of the one-year statute of limitation provided the plaintiff first files a notice with a HIPAA compliant authorization in a timely fashion. In reliance on this statutory extension, the original action was filed on September 30, 2014. After the defendants filed motions to dismiss, plaintiff took a voluntary nonsuit on June 19, 2015.

On May 9, 2016, plaintiff served the defendants with a second pre-suit notice. Plaintiff filed its second complaint, on August 26, 2016. Following the filing of the second complaint, each defendant again filed a motion to dismiss. Defendants argue that the medical authorizations attached to the first pre-suit notice did not comply with Tenn. Code Ann. § 29-26-121, because they were not HIPAA compliant. Defendants argue that the medical authorizations are deficient in that they fail to include material required by 45 C.F.R. § 164.508(c)(1): "[t]he name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure…[t]he name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure…[a]n expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure." 45 C.F.R. § 164.508(c)(1)(ii) – (iii) and (v).[2] Defendants contend that, due to these deficiencies, plaintiff was not entitled to rely upon the 120-day extension provided for in Tenn. Code Ann. § 29-26-121(c). Consequently, the defendants argue that the plaintiff's suit is time-

---

[2] As taken verbatim from 45 C.F.R. § 164.508(c)(1)(ii) – (iii) and (v).

barred and plaintiff cannot rely on the savings statute to revive a complaint that was time-barred by the one year statute of limitations.

The trial court, in its order denying defendants' motions to dismiss, acknowledged that the first pre-suit notice "did not identify the healthcare providers authorized to release the plaintiff's medical records and did not identify the individuals authorized to receive the plaintiff's medical records as required by 45 C.F.R. 164.508(c)." Nonetheless, the court held that:

> where an authorization has a blank space identifying the party requesting the records and a blank space identifying the party that is to receive the records, <u>that could be over compliance with the requirement and the reason it could be over compliance</u> is because it allows not only records on this particular incident but it allows a medical records history which could be relevant.

(Underlining in original). Furthermore, the court took judicial notice[3] that:

> the practice and custom in the 2nd Judicial District has been and continues to be to provide blank authorizations so that the person requesting information can get information from anyone they want to, not just the provider of the incident but also the provider of prior medical care or history.

The court found that there is no prejudice demonstrated by virtue of plaintiff's failure to fill in the blanks. The court further rejected the "defendants' position that it would be improper for a medical provider or medical provider's counsel to alter a medical authorization after it is received from a patient, and litigation is not yet pending." This interlocutory appeal followed.

## II.

Because this matter comes to us as an interlocutory appeal, our review is limited to the issues certified in the order of the trial court and "those matters clearly embraced within the questions certified." ***Tenn. Dep't of Mental Health & Mental Retardation v. Hughes***, 531 S.W.2d 299, 300 (Tenn. 1975). The trial court certified the following issues for review, as quoted directly from the court's order:

---

[3] While the defendants challenge the plaintiff's position that the alleged "custom" in the Second Judicial District amounts to "extraordinary cause," *See* Tenn. Code Ann. § 29-26-121(b), the issue of whether the trial court could legally take judicial notice of a local custom was not certified in the trial court's order granting the defendants permission to take an interlocutory appeal. For this reason, we will not address whether Rule of Evidence 201 authorized the court to take judicial notice in this case.

-3-

Whether a trial court can take judicial notice of a practice in the Second Judicial District of utilizing "blank" medical authorizations that are not HIPAA compliant, and equate same to extraordinary cause to excuse a plaintiff's noncompliance with Tennessee Code Annotated § 29-26-121.

Whether it is permissible for a third party to alter or modify a medical authorization after it has been executed by a patient or patient's authorized representative.

Whether a defendant's claim of prejudice is waived when a defendant does not attempt to use a medical authorization that the defendant believes to be defective.

Appellants raise an additional issue[4] not certified in the trial court order. We limit our consideration to those issues presented in the trial court order granting the request for interlocutory appeal and ignore an uncertified issue.

### III.

The defendants have properly employed a Tenn. R. Civ. P. 12.02 motion in challenging the plaintiff's compliance with Tenn. Code Ann. § 29-26-121. *Myers v. AMISUB (SFH), Inc.* 382 S.W.3d 300, 307 (Tenn. 2012). As *Myers* noted,

The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the

---

[4] The issue that is not before us is as follows: "[w]hether Tennessee Code Annotated § 29–26–121(c) precludes the Appellee from benefitting twice from the 120 day extension to the limitations period both prior to filing his original Complaint, and again, upon the second filing of the action." The quoted material is from the defendants' joint brief.

-4-

statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance…

\* \* \*

"[W]hether [Plaintiffs] ha[ve] demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings." *Myers*, 382 S.W.3d at 307 (citation omitted).

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).

The issues before us pertain to matters of law. Hence, we review them with no presumption of correctness accorded to the trial court's judgment. *Thurmond*, 433 S.W.3d at 516-17 (citing *Myers,* 382 S.W.3d at 307; *Leach v. Taylor,* 124 S.W.3d 87, 90 (Tenn. 2004)). This case involves statutory interpretations, which are a matter of law. We review such issues with no presumption of correctness:

[T]his Court's primary duty is to ascertain and effectuate legislative intent without broadening a statute beyond its intended scope. In fulfilling this duty, we construe statutes in a reasonable manner which avoids statutory conflict and provides for harmonious operation of the laws. Our analysis always begins with the words the General Assembly has used in the statute. If the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage, without a forced interpretation. Where statutory language is ambiguous, we consider the overall statutory scheme, the legislative history, and other sources.

*Thurmond*, 433 S.W.3d at 516-17 (internal citations and quotation marks omitted).

**IV.**

A health care liability plaintiff's pre-suit notice shall include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code

Ann. § 29–26–121(a)(2)(E). The specific purpose of subsection (a)(2)(E) is not to provide defendants with notice of a potential claim; rather, as the Supreme Court noted in **Stevens ex rel. Stevens v. Hickman Community Health Care Services, Inc.**, 418 S.W.3d 547 (Tenn. 2013), the subsection "serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." **Id.** at 555. "Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." **Id.** (citing 45 C.F.R. § 164.508(a)(1)).

However, despite the importance of the HIPAA authorization, the Supreme Court has held that "[a] plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29–26–121(a)(2)(E)...should not derail a healthcare liability claim." **Stevens**, 418 S.W.3d at 555. The Supreme Court concluded in **Stevens**, that "a plaintiff must substantially comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29–26–121(a)(2)(E)." **Id.** In determining whether a plaintiff has substantially complied with the statute, "a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." **Id.** at 556. The trial court may exercise "discretion to excuse compliance...only for extraordinary cause shown." Tenn. Code Ann. § 29–26–121(b). In **Myers**, our Supreme Court stated:

> The statute does not define "extraordinary cause," and the statute's legislative history does not indicate that the legislature intended to assign a meaning to that phrase other than its plain and ordinary meaning. "Extraordinary" is commonly defined as "going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." One legal scholar, commenting on Tennessee Code Annotated sections 29–26–121 and 122, has noted that possible examples of "extraordinary cause" might include "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary."

**Myers**, 382 S.W.3d at 310-11. (internal citations omitted).

As noted above, the medical authorizations accompanying plaintiff's first pre-suit notice failed to contain three of the core elements for HIPAA-compliant authorizations found in 45 C.F.R. § 164.508(c). Notably, the forms did not list any person(s), or class of person(s) that were authorized to disclose protected health information; the forms did not list any person(s) or class or persons, to whom a disclosure of information could be made.

-6-

The forms contained blanks where this information should be. Plaintiff also failed to include an expiration date or event. This Court has previously held that forms that are markedly inadequate do not actually authorize or facilitate any disclosure. *See, e.g.*, ***J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.***, 542 S.W.3d 502, 513 (Tenn. Ct. App. 2016), appeal denied (Mar. 9, 2017); ***Roberts v. Prill***, No. E2013-02202-COA-R3CV, 2014 WL 2921930, at *5 (Tenn. Ct. App. June 26, 2014). We hold that the medical authorizations in this case do not substantially comply with the provisions of Tenn. Code Ann. § 29–26–121. Accordingly, the dismissal of the plaintiff's complaint is with full prejudice.

The trial court can excuse what would otherwise be noncompliance with a finding of extraordinary cause. However, the trial court in this case made no such clear finding. Instead, the court conclusively held that the medical authorizations overly[5] complied with the statutory requirements, and were therefore valid. The trial court did so, at least in part, by taking judicial notice of a local practice in the second judicial district of using "blank" authorizations. The trial judge, *sua sponte*, took judicial notice based upon his thirty-five years of personal injury experience, and ten years of judicial experience.

Plaintiff argues that any challenge to the judicial notice was waived by defendants' failure to expressly request an opportunity to be heard. This argument misses the point. The problem lies not in the taking of judicial notice, but in the apparent contention that the judicially-noticed custom rises to the level of extraordinary cause to excuse compliance.

Contrary to the purported local practice, our Legislature requires a HIPAA-compliant medical authorization to accompany pre-suit notice. *See* Tenn. Code Ann. § 29–26–121(a)(2)(E). HIPAA deems authorizations defective if not filled out completely. *See* 45 C.F.R. § 164.508(b)(2). Local counsel's practice of leaving medical authorization forms incomplete does not override the pertinent statutory scheme. Plaintiff's counsel acknowledged, in oral argument, that the judicially-noticed custom of filling in blanks on medical authorizations is the only thing rendering the authorizations HIPAA compliant. To allow a local practice alone to excuse otherwise noncompliance would damage uniformity in application of pre-suit notice requirements between judicial districts across the State.

Accordingly, we find that judicial notice of a local custom, alone, does not rise to the level of extraordinary cause. Therefore, the trial court abused its discretion by taking judicial notice of a practice in the second judicial district of utilizing "blank" medical authorizations that are not HIPAA compliant, and equating the same to extraordinary

---

[5] While the trial court's use of the word "overly" is not real clear, the court's reference to "overly" may have been prompted by the court's pointing out that the authorizations with blanks could be used to obtain medical records from a medical provider who is not a defendant in this case.

cause to excuse a plaintiff's noncompliance with Tennessee Code Annotated § 29-26-121.

## V.

We next consider whether a third party is permitted to alter or modify a medical authorization after it has been executed by a patient or patient's authorized representative. The trial court, in its order denying defendants' motions to dismiss, rejected defendants' position that it would be improper for a medical provider or medical provider's counsel to alter a medical authorization after it is received from a patient, and litigation is not yet pending. The trial court stated that:

> the Court finds there is no prejudice demonstrated by failing to fill out the forms with the names, and it is ridiculous to use technicalities of this nature to terminate a potentially meritorious case, which is contrary to the constitution of the State of Tennessee.

"Defective authorizations" are defined in 45 C.F.R. § 164.508(b)(2). An authorization is not valid if, among other things, it "has not been filled out completely, with respect to an element described by paragraph (c) of this section." *See* 45 C.F.R. § 164.508(b)(2). Defendants argue that the implication of defining an incomplete authorization as defective is that an individual is not permitted to fill-in blanks on a medical authorization after it has been presented partially completed by a patient or a patient's representative. We agree with the defendants.

This Court has previously held that a defendant is not responsible for filling in blanks on medical authorizations provided as part of pre-suit notice. In *J.A.C.*, the court addressed this issue:

> The argument that a health care liability defendant should complete or "customize" a medical authorization that contains blanks has been specifically rejected by two recent decisions of this Court. In *Roberts v. Prill*, the plaintiff admitted that she intentionally left portions of the HIPAA form blank and anticipated that the defendant medical providers would fill it in. In summarizing the crux of the plaintiff's argument as to why her complaint should not be dismissed despite the presence of an incomplete form, we noted as follows: "She essentially argues that the onus should be placed on Defendants to test the sufficiency of the form or even to complete an inadequate form." We rejected the plaintiff's argument and noted as we had in *Stevens* that it is the health

care liability plaintiff, not defendant, that is responsible for complying with the requirements of Tennessee Code Annotated section 29–26–121(a)(2)(E).

* * *

We know of no authority permitting the Providers to alter the authorization forms that were already given to them. Moreover, as we have noted, it was incumbent upon the Plaintiffs to achieve substantial compliance with Tennessee Code Annotated section 29–26–121(a)(2)(E). The Providers owed no duty to the Plaintiffs to help them achieve this standard. The Plaintiffs' argument that the Providers should have customized the forms given to them is accordingly rejected.

*J.A.C.*, 542 S.W.3d at 515–16 (internal citations omitted).

Accordingly, we follow our precedent in holding that a person receiving an authorization with blanks is not authorized to fill in the blanks.

**VI.**

As noted above, the proper means to challenge plaintiff's compliance with Tenn. Code Ann. § 29-26-121 is through a Tenn. R. Civ. P. 12.02 motion. Our Court has rejected the argument that the onus should be placed on defendants to test the sufficiency of the authorization, or even to complete an inadequate authorization. *See, e.g.*, **Roberts v. Prill**, 2014 WL 2921930, at *6. Furthermore, our court noted in **J.A.C.**:

Several Tennessee decisions have rejected the proposition that a health care liability defendant has a duty to assist a plaintiff achieve compliance or to test whether an obviously deficient HIPAA form would allow the release of records. *See, e.g.*, **Stevens**, 418 S.W.3d at 559 ("Plaintiff—not Defendants—was responsible for complying with the requirements of Tenn. Code Ann. § 29–26–121(a)(2)(E)."); **Dolman v. Donovan**, No. W2015-00392-COA-R3-CV, 2015 WL 9315565, at *5 (Tenn. Ct. App. Dec. 23, 2015) (rejecting the plaintiffs' argument that the medical providers could not have been prejudiced because they never attempted to obtain medical records with the deficient medical authorization provided), *perm. app. denied* (Tenn. May 6, 2016). Similarly,

our courts have rejected the notion that a health care liability defendant needs to inform a plaintiff that the provided authorization form is deficient before filing a motion to dismiss. *Stevens*, 418 S.W.3d at 559; *Vaughn v. Mountain States Health Alliance*, No. E2012-01042-COA-R3-CV, 2013 WL 817032, at *4 (Tenn. Ct. App. Mar. 5, 2013) (rejecting the argument that the defendants should have contacted plaintiff's counsel prior to an action being filed against them in order to inform plaintiff's counsel that the requirements of Tennessee Code Annotated section 29–26–121 had not been met), *overruled on other grounds by Davis v. Ibach*, 465 S.W.3d 570 (Tenn. 2015).

*J.A.C.*, 542 S.W.3d at 514–15. Defendants are not required to attempt to use a medical authorization to gather patient medical records, if the defendant believes the authorizations to be defective. It therefore follows that a defendant's claim of prejudice is not waived by failing to attempt to use or otherwise "test" an allegedly defective authorization.

## VII.

Based on the foregoing, we reverse the judgment of the trial court denying defendants' motions to dismiss. This case is remanded to the trial court for the entry of an order dismissing plaintiff's complaint with prejudice. Costs on appeal are taxed to the appellee, Desiree Dawn Roberts.

_____
CHARLES D. SUSANO, JR., JUDGE