IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 16, 2018 Session

# ERNEST SMITH v. WELLMONT HEALTH SYSTEM ET AL. [1]

**Interlocutory Appeal from the Law Court for Sullivan County**
**No. C41513 (C)      E. G. Moody, Judge**
_____

**No. E2017-00850-COA-R9-CV**
_____

This interlocutory appeal involves a health care liability action. Plaintiff gave potential defendants written notice of his malpractice claim. *See* Tenn. Code Ann. § 29-26-121(c). Plaintiff then filed his complaint. In doing so, he relied upon a 120-day extension of the one year statute of limitations as provided for in § 29-26-121(c). Each defendant moved to dismiss the plaintiff's complaint. By an order entered April 1, 2015, the trial court granted the joint motion to dismiss of three of the defendants. The court's order concluded that plaintiff's complaint was time-barred. Plaintiff did not appeal the court's judgment and, with the passage of time, it became final. Meanwhile, the motions to dismiss of the other defendants, all of which were essentially based upon the same ground as that of the joint motion of the dismissed defendants, were awaiting resolution by the trial court. Before this could happen, however, the plaintiff voluntarily dismissed his complaint. Nine months later, plaintiff sent a new pre-suit notice. Four months after that, plaintiff filed a second health care liability action against the same defendants, *including* those dismissed by the trial court in its April 1, 2015 order. All defendants again moved to dismiss the complaint. The trial court denied the motions. Later, the trial court decided that its April 1, 2015 dismissal order was incorrect. It concluded that plaintiff's first complaint was not time-barred because, according to the court, plaintiff provided proper pre-suit notice. On the defendants' further motions, the court granted them permission to pursue an interlocutory appeal pursuant to the provisions of Tenn. R. App. P. 9. We did likewise. We now reverse the judgment of the trial court denying defendants' motions to dismiss.

---

[1] Because of some common issues, this case was consolidated with the case of ***Roberts v. Wellmont Health System et al.***, E2017-00845-COA-R9-CV for the sole purpose of oral argument.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Law Court
Reversed; Case Remanded with Instructions**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL
SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Jimmie C. Miller and Meredith B. Humbert, Kingsport, Tennessee, for the appellants, Dr.
Remiguisz Jan Switalski, Christopher Anthony Neglia, DO and Holston Medical Group,
P.C.

Russell W. Adkins and Andrew T. Wampler, Kingsport, Tennessee, for the appellant,
Wellmont Health System and Wellmont Health System, dba Wellmont Holston Valley
Medical Center.

Kyle E. Hedrick, Chattanooga, Tennessee, for the appellant, Life Care Centers of
America, Inc., dba Life Care Center of Greeneville.

George Todd East, Kingsport, Tennessee, for the appellee, Ernest Smith.


**OPINION**

**I.**

The facts that prompted this litigation occurred in late January 2013 and early
February 2013. Plaintiff provided pre-suit notice of his health care liability claim to a
number of potential defendants[2] on January 23, 2014. On May 30, 2014, plaintiff filed his
complaint. On July 9, 2014, Dr. Remiguisz Jan Switalski, Dr. Christopher Anthony
Neglia, and Holston Medical Group P.C., filed a joint motion to dismiss the complaint on
the ground that plaintiff had failed to comply with the pre-suit notice mandates of Tenn.
Code Ann. § 29-26-121. Motions to dismiss on the same ground were filed by Wellmont
Health System, on July 9, 2014, and by Life Care Centers of America, Inc., on August
18, 2014.

On December 12, 2014, the trial court heard oral argument on defendants' motions
to dismiss. On April 1, 2015, the trial court entered an order granting the joint motion of
Dr. Switalski, Dr. Neglia, and Holston Medical Group. Later, the plaintiff voluntarily
nonsuited his complaint with respect to remaining defendants. On April 8, 2015, the court
entered an order confirming plaintiff's nonsuit as to these remaining defendants.

---

[2] A few of the recipients of notice were eventually dismissed. Since they are not involved in this
Rule 9 appeal, we will not mention them by name or otherwise discuss the claims against them.

On January 12, 2016, plaintiff provided pre-suit notice of its intent to file a second health care liability action. On May 9, 2016, the second complaint was filed. Each defendant moved to dismiss the complaint. On November 15, 2016, the trial court heard oral arguments. The trial court took the matter under advisement and requested proposed orders from defendants. The trial court stated it would allow plaintiff to respond. Proposed orders were submitted. On January 9, 2017, the trial court entered an order denying defendants' motions to dismiss. The trial court's findings included that:

> The medical authorizations that the Plaintiff served on the Defendants…was sufficient although it did not specify who was authorized to release records; it did not specify to whom the records could be released and it did not specify an expiration date. The Plaintiff attached the medical authorization to a letter…he sent to the Defendants in which he explained that they could use the authorizations to get the records of the other Defendants and he invited them to contact him if they had any questions.

> The Plaintiff explained that the procedure it followed was and has been the customary practice and manner in which to provide medical authorizations in the 2nd Judicial District for many years. The Court agrees that it has been the custom, based on its 35 years of personal injury practice and 10 years of judicial experience; therefore, the Court finds that the Plaintiff, not only substantially complied with the requirements of T.C.A. §29-26-121, but that it exceeded them.

> *       *       *

> The reason the authorization did not specify who was authorized to release the records and the reason the authorization did not specify who was authorized to receive them was so that the Defendants could fill in that information in the blanks provided and so that they could obtain all medical records of the Plaintiff from all sources, not just from the other Defendants, and not limited to the records of the incident in question which is why the custom developed.

The trial court, in its order, changed its prior order stating that plaintiff's case was time-barred as to Dr. Switalski, Dr. Neglia, and Holston Medical Group. The trial court held that even if plaintiff did not substantially comply with Tenn. Code Ann. § 29-26-121, its non-compliance is excused by extraordinary cause. The trial court further found that

[t]he Defendants have failed to take any steps toward obtaining the medical records, therefore, they have forfeited any claim of actual prejudice but instead they only sought a dismissal which is contrary to the statutory goal of facilitating a timely evaluation of the merits of the claim in order to promote a potential settlement before the suit is filed in court.

The Court further finds that none of the Defendants have demonstrated any actual prejudice if there are any deficiencies in the medical authorization.

This interlocutory appeal followed.

## II.

Because this matter comes to us as an interlocutory appeal, our review is limited to the issues certified in the order of the trial court and "those matters clearly embraced within the questions certified." ***Tenn. Dep't of Mental Health & Mental Retardation v. Hughes***, 531 S.W.2d 299, 300 (Tenn. 1975). The trial court certified the following issues for review, as quoted directly from the court's order:

Whether a trial court can take judicial notice of a practice in the Second Judicial District of utilizing "blank" medical authorizations that are not HIPAA complaint [sic], and equate the same to extraordinary cause to excuse a plaintiff's noncompliance with Tennessee Code Annotated § 29-26-121.

Whether it is permissible for a third party to alter or modify a medical authorization after it has been executed by a patient or patient's authorized representative.

Whether a defendant's claim of prejudice is waived when a defendant does not attempt to use a medical authorization that the defendant believes to be defective.

The trial court further requested this Court's guidance in regard to:

Whether it was appropriate for the trial court to overrule its prior Order holding that the plaintiff failed to substantially comply with the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(E) twenty-one (21) months after the Order was entered and following the filing of a new action.

Defendants raise an additional issue not certified by the court order.[3] We have no jurisdiction to consider an uncertified issue. Hence, we cannot consider it on this appeal.

## III.

The defendants have properly employed a Tenn. R. Civ. P. 12.02 motion in challenging the plaintiff's compliance with Tenn. Code Ann. § 29-26-121. *Myers v. AMISUB (SFH), Inc.* 382 S.W.3d 300, 307 (Tenn. 2012). As *Myers* noted,

> The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13.
>
> \* \* \*
>
> "[W]hether [Plaintiffs] ha[ve] demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness

---

[3] The issue that is not before us is as follows: "[w]hether Tennessee Code Annotated § 29–26–121(c) precludes the Appellee from benefitting twice from the 120 day extension to the limitations period both prior to filing his original Complaint, and again, upon the second filing of the action." The quoted material is from the defendants' joint brief.

applying only to the trial court's findings of fact and not to the legal effect of those findings." *Myers*, 382 S.W.3d at 307 (citation omitted).

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).

The issues before us pertain to matters of law. Hence, we review them with no presumption of correctness accorded to the trial court's judgment. *Thurmond*, 433 S.W.3d at 516-17 (citing *Myers,* 382 S.W.3d at 307; *Leach v. Taylor,* 124 S.W.3d 87, 90 (Tenn. 2004)). We review the trial court's decision to excuse compliance under an abuse of discretion standard. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Myers*, 382 S.W.3d at 308.

This case involves statutory interpretations, which are a matter of law. We review such issues with no presumption of correctness accorded to the trial court:

> [T]his Court's primary duty is to ascertain and effectuate legislative intent without broadening a statute beyond its intended scope. In fulfilling this duty, we construe statutes in a reasonable manner which avoids statutory conflict and provides for harmonious operation of the laws. Our analysis always begins with the words the General Assembly has used in the statute. If the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage, without a forced interpretation. Where statutory language is ambiguous, we consider the overall statutory scheme, the legislative history, and other sources.

*Thurmond*, 433 S.W.3d at 516-17 (internal citations and quotation marks omitted).

## IV.

A health care liability plaintiff's pre-suit notice shall include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29–26–121(a)(2)(E). The specific purpose of subsection (a)(2)(E) is not to provide defendants with notice of a potential claim; rather, as the Supreme Court noted in *Stevens ex rel. Stevens v. Hickman Community Health Care Services, Inc.,* 418 S.W.3d 547 (Tenn. 2013), the subsection "serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a

plaintiff's medical records." *Id.* at 555. "Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Id.* (citing 45 C.F.R. § 164.508(a)(1)).

However, despite the importance of the HIPAA authorization, the Supreme Court has held that "[a] plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29–26–121(a)(2)(E)...should not derail a healthcare liability claim." *Stevens*, 418 S.W.3d at 555. The Supreme Court concluded in *Stevens* that "a plaintiff must substantially comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29–26–121(a)(2)(E)." *Id.* In determining whether a plaintiff has substantially complied with the statute, "a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id.* at 556. The trial court may exercise "discretion to excuse compliance...only for extraordinary cause shown." Tenn. Code Ann. § 29–26–121(b). In *Myers*, the Supreme Court stated as follows:

> The statute does not define "extraordinary cause," and the statute's legislative history does not indicate that the legislature intended to assign a meaning to that phrase other than its plain and ordinary meaning. "Extraordinary" is commonly defined as "going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." One legal scholar, commenting on Tennessee Code Annotated sections 29–26–121 and 122, has noted that possible examples of "extraordinary cause" might include "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary."

*Myers*, 382 S.W.3d at 310-11. (internal citations omitted).

Turning to the facts of this case, the medical authorizations sent with plaintiff's first pre-suit notice failed to contain three of the core elements mandated by 45 C.F.R. § 164.508(c). The trial court concluded that local custom sufficed as extraordinary cause to excuse the omissions.[4] Plaintiff argues that any challenge to the trial court taking of judicial notice based on a local custom was waived by defendants. This argument misses

---

[4] Interestingly enough, counsel for *Roberts* at oral argument, in which the *Smith* case was consolidated, acknowledged that this judicially-noticed custom of leaving blanks in a medical authorization is the only thing rendering the authorizations HIPAA compliant.

the point. The problem lies not in the taking of judicial notice,[5] but in the contention that the judicially-noticed custom rises to the level of extraordinary cause to excuse compliance.

Contrary to the assumed local practice in the Second District, the pertinent statutory scheme requires that a HIPAA-compliant medical authorization be with the pre-suit notice. *See* Tenn. Code Ann. § 29–26–121(a)(2)(E). HIPAA deems authorizations defective if not filled out completely. *See* 45 C.F.R. § 164.508(b)(2). The local practice of leaving blanks in a medical authorization does not satisfy the aforesaid statutory scheme. To allow a local practice alone to excuse otherwise noncompliance would damage uniformity in application of pre-suit notice requirements between judicial districts across the State.

Accordingly, we find that judicial notice of a local custom, without more, does not rise to the level of extraordinary cause. Therefore, the trial court abused its discretion by taking judicial notice of a practice in the second judicial district of utilizing "blank" medical authorizations that are not HIPAA compliant, and equating the same to extraordinary cause to excuse a plaintiff's noncompliance with Tenn. Code Ann. § 29-26-121.

## V.

We next consider whether a third party is permitted to alter or modify a medical authorization after it has been executed by a patient or patient's authorized representative. The trial court, in its order denying defendants' motions to dismiss, stated that:

> The reason the authorization did not specify who was authorized to release the records and the reason the authorization did not specify who was authorized to receive them was so that the Defendants could fill in that information in the blanks provided and so that they could obtain all medical records of the Plaintiff from all sources, not just from the other Defendants, and not limited to the records of the incident in question which is why the custom developed.

"Defective authorizations" are defined in 45 C.F.R. § 164.508(b)(2). An authorization is not valid if, among other things, it "has not been filled out completely,

---

[5] While the defendants challenge the plaintiff's position that the alleged "custom" in the Second Judicial District amounts to "extraordinary cause," *See* Tenn. Code Ann. § 29-26-121(b), the issue of whether the trial court could legally take judicial notice of a local custom was not certified in the trial court's order granting the defendants permission to take an interlocutory appeal. For this reason, we will not address whether Rule of Evidence 201 authorized the court to take judicial notice in this case.

with respect to an element described by paragraph (c) of this section." 45 C.F.R. § 164.508(b)(2). Defendants argue

> [t]he clear implication of defining an incomplete authorization as defective is that an individual is not permitted to fill in blanks on a medical authorization after it has been partially completed by a patient or patient's representative.

We agree.

This Court has previously held that a defendant is not responsible for filling in blanks on medical authorizations submitted as part of pre-suit notice. In ***J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.***, 542 S.W.3d 502, 515–16 (Tenn. Ct. App. 2016), *appeal denied* (Mar. 9, 2017), the court addressed this issue:

> The argument that a health care liability defendant should complete or "customize" a medical authorization that contains blanks has been specifically rejected by two recent decisions of this Court. In ***Roberts v. Prill***, the plaintiff admitted that she intentionally left portions of the HIPAA form blank and anticipated that the defendant medical providers would fill it in. In summarizing the crux of the plaintiff's argument as to why her complaint should not be dismissed despite the presence of an incomplete form, we noted as follows: "She essentially argues that the onus should be placed on Defendants to test the sufficiency of the form or even to complete an inadequate form." We rejected the plaintiff's argument and noted as we had in ***Stevens*** that it is the health care liability plaintiff, not defendant, that is responsible for complying with the requirements of Tennessee Code Annotated section 29–26–121(a)(2)(E).
>
> *       *       *
>
> We know of no authority permitting the Providers to alter the authorization forms that were already given to them. Moreover, as we have noted, it was incumbent upon the Plaintiffs to achieve substantial compliance with Tennessee Code Annotated section 29–26–121(a)(2)(E). The Providers owed no duty to the Plaintiffs to help them achieve this standard. The Plaintiffs' argument that the Providers should have customized the forms given to them is accordingly rejected.

***J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.***, 542 S.W.3d 502, 515–16 (Tenn. Ct. App. 2016), *appeal denied* (Mar. 9, 2017) (internal citations omitted).

Accordingly, we continue to maintain that third parties are not permitted to alter or modify a medical authorization after it has been executed by a patient or patient's authorized representative.

**VI.**

The trial court held that:

> Defendants have failed to take any steps toward obtaining the medical records, therefore, they have forfeited any claim of actual prejudice but instead they only sought a dismissal which is contrary to the statutory goal of facilitating a timely evaluation of the merits of the claim in order to promote a potential settlement before the suit is filed in court.

As noted above, the proper means to challenge plaintiff's compliance with Tenn. Code Ann. § 29-26-121 is through a Tenn. R. Civ. P. 12.02 motion. Our Court has rejected the argument that the onus should be placed on defendants to test the sufficiency of the authorization, or even to complete an inadequate authorization. *See, e.g.*, ***Roberts v. Prill***, No. E2013-02202-COA-R3CV, 2014 WL 2921930, at *6 (Tenn. Ct. App. June 26, 2014). Our court noted in ***J.A.C.***:

> Several Tennessee decisions have rejected the proposition that a health care liability defendant has a duty to assist a plaintiff achieve compliance or to test whether an obviously deficient HIPAA form would allow the release of records. *See, e.g.*, **Stevens**, 418 S.W.3d at 559 ("Plaintiff—not Defendants—was responsible for complying with the requirements of Tenn. Code Ann. § 29–26–121(a)(2)(E)."); ***Dolman v. Donovan***, No. W2015-00392-COA-R3-CV, 2015 WL 9315565, at *5 (Tenn. Ct. App. Dec. 23, 2015) (rejecting the plaintiffs' argument that the medical providers could not have been prejudiced because they never attempted to obtain medical records with the deficient medical authorization provided), *perm. app. denied* (Tenn. May 6, 2016). Similarly, our courts have rejected the notion that a health care liability defendant needs to inform a plaintiff that the provided authorization form is deficient before filing a motion to dismiss. **Stevens**, 418 S.W.3d at 559; ***Vaughn v. Mountain***

***States Health Alliance***, No. E2012-01042-COA-R3-CV, 2013 WL 817032, at \*4 (Tenn. Ct. App. Mar. 5, 2013) (rejecting the argument that the defendants should have contacted plaintiff's counsel prior to an action being filed against them in order to inform plaintiff's counsel that the requirements of Tennessee Code Annotated section 29–26–121 had not been met), *overruled on other grounds by **Davis v. Ibach***, 465 S.W.3d 570 (Tenn. 2015).

***J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.***, 542 S.W.3d 502, 514–15 (Tenn. Ct. App. 2016), appeal denied (Mar. 9, 2017).

Defendants are not required to use a medical authorization to gather a patient's medical records, if the authorization is not compliant with HIPAA. It therefore follows that a defendant's claim of prejudice is not waived by failing to attempt to use or otherwise "test" an allegedly defective authorization.

## VII.

The final issue emanates from the effort of the trial court to overrule an order from the first lawsuit approximately twenty-one (21) months after its entry. The court acknowledged that it did this even though "Plaintiff did not appeal the Order or file a motion for reconsideration." In doing so, the court permitted the resurrection of a case against three parties it had previously dismissed. Our guidance has been requested by the trial court as to whether or not this course of action was permissible. For the following reasons, we hold it is not.

The viability of plaintiff's second lawsuit hinges upon whether or not his pre-suit notice in the first lawsuit was as statutorily mandated. The trial court, in an order dismissing the three defendants in the first lawsuit, held that it was not. The court held that because the pre-suit notice was not legally adequate, the plaintiff was not entitled to the 120-day extension, and hence his complaint was barred by the statute of limitations. Plaintiff made no attempt to appeal. Plaintiff chose to voluntarily dismiss the remaining defendants before the court ruled on the remaining motions to dismiss.

The trial court should not have allowed plaintiff to re-litigate this issue in the second-filed lawsuit between the same parties. The trial court erred when it did. Plaintiff was estopped from so doing. Plaintiff does not get a mulligan. The trial court's subsequent order overruling itself was therefore produced in error as well.

## VIII.

Based on the foregoing, we reverse the judgment of the trial court denying defendants' motions to dismiss. This case is remanded to the trial court for the entry of an order dismissing plaintiff's complaint with prejudice. Costs on appeal are taxed to the appellee, Ernest Smith.

_____
CHARLES D. SUSANO, JR., JUDGE