IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 8, 2025 Session

## PAMELA CRENSHAW ON BEHALF OF HER MOTHER DOROTHY MURPHY v. METHODIST HEALTHCARE - MEMPHIS HOSPITALS, ET AL.

Appeal from the Circuit Court for Shelby County
No. CT-3080-23     Rhynette N. Hurd, Judge
_____

### No. W2024-00682-COA-R3-CV
_____

This is a health care liability case that centers around the statutory requirements for the pre-suit notice to be provided to defendants pursuant to Tennessee Code Annotated section 29-26-121.  The trial court granted the defendants' joint motion to dismiss with prejudice after determining the pre-suit notice provided in this matter did not substantially comply with the requirements of Tennessee Code Annotated section 29-26-121.  The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFERY USMAN, J., joined.

James E. King, Jr., Memphis, Tennessee, for the appellant, Pamela L. Crenshaw.

Margaret C. Roney, Noor S. Obaji, Memphis, Tennessee, for the appellee, Todd Motley, M.D.

Claire M. Cissell, William C. Podesta, Memphis, Tennessee for the appellee, Ravi Madasu, M.D.

Jill M. Steinberg, Alex J. Hall, Memphis, Tennessee for the appellees, Methodist Healthcare Memphis Hospitals, Methodist Le Bonheur Healthcare.

## OPINION

## I.  FACTS & PROCEDURAL HISTORY

This health care liability case concerns certain events that occurred between March 25, 2022, and April 2, 2022.[1]  Ms. Dorothy Murphy was a resident of Graceland Rehabilitation and Nursing Center in Memphis, Tennessee.  On March 25, 2022, Ms. Murphy was transported via ambulance to "Methodist South Hospital's emergency department."  Once she arrived, Ms. Murphy was treated by both Dr. Ravi Madasu and Dr. Todd Motley.  On March 28, 2022, Ms. Murphy was diagnosed by Dr. Steven Woods with several conditions, which differed in some capacity from the initial diagnosis rendered by Dr. Madasu and Dr. Motley.  On March 31, 2022, Ms. Murphy's condition deteriorated further, and she eventually passed away on April 2, 2022.

On March 29, 2023, Ms. Pamela Crenshaw, Ms. Murphy's daughter and the appellant in this matter, mailed letters that she intended to serve as pre-suit notice of a health care liability lawsuit.[2]  Ms. Murphy attached a document entitled "Authorization to Disclose Healthcare Information," which listed several healthcare providers and stated, "I authorize the use of disclosure of [Ms. Murphy's] health information as described below."  Given the importance of this document to the present appeal, we have reproduced it as follows:

---

[1] This case was dismissed prior to discovery.  As such, we recite the underlying facts as presented in the plaintiff's complaint.

[2] Tennessee Code Annotated section 29-26-121(a)(1) requires defendant health care providers in a health care liability action be sent written pre-suit notice at least sixty days before the filing of the complaint.

## AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

Patient Name: __DOROTHY M. MURPHY__      Social Security No.: __*** - **- 9635__

Date of Birth: __MAY 5, 1953__

I authorize the use of disclosure of the above-named individual's health information as described below:

1. The following individual or organization is authorized to make the disclosure:

____ Methodist Le Bonheur Healthcare
Methodist South Hospital
P.O. Box 40628, Memphis, TN 38174

____ Melanie N. Hutchison-Gibson, APN
MidSouth Pulmonary Specialists
5050 Poplar Avenue, Ste 800, Memphis, TN 38157

____ Graceland Rehabilitation and Nursing Center
1250 Farrow Road, Memphis, TN 38116

____ Perisco A. Wofford, M.D.
4567 Millbranch Road, Memphis, TN 38116

____ S. Alexander Woods, Jr.
MidSouth Pulmonary Specialists
5050 Poplar Avenue, Ste 800, Memphis, TN 38157

____ Asif Seed Kazmi, M.D.
Mid-South Renal Clinic PLC
1264 Wesley Drive, Ste 604, Memphis, TN 38116

____ Syed J. Zaidi, M.D.
MidSouth Pulmonary Specialists
5050 Poplar Avenue, Ste 800, Memphis, TN 38157

____ Patrick R. Higgins, DO
MidSouth Pulmonary Specialists
5050 Poplar Avenue, Ste 800, Memphis, TN 38157

____ Ravi K. Madasu, M.D.
1300 Wesley Drive, Memphis, TN 38116

____ Rajesh Kabra, M.D.
1211 Union Avenue, Memphis, TN 38104

____ Dwight A. Dishmon, M.D.
Metropolitan Cardiovascular Institute
1975 Nonconnah Blvd., Memphis, TN 38132

____ Lawrence T. LeBlond, M.D.
3960 New Covington Pike, Memphis, TN 38128

____ Todd S. Motley, M.D.
1264 Wesley Drive, Memphis, TN 38116

2. The type and amount of information to be used or disclosed is as follows: (include dates where appropriate)

____ physician/nurse assessment    ____ medication list    ____ history and physical

____ discharge summary    ____ laboratory results    ____ x-ray and imaging reports

____ consultation reports    __X__ entire record    ____ patient information sheet

____ other: _____

I understand that the information in my health record may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV). It may also include information about behavioral or mental health services, and treatment for alcohol and drug abuse.

20

3.   This information may be disclosed to and used by the following individuals or organizations:

_____ Methodist Le Bonheur Healthcare
Methodist South Hospital
P.O. Box 40628, Memphis, TN 38174

_____ Melanie N. Hutchison-Gibson, APN
MidSouth Pulmonary Specialists
5050 Poplar Avenue, Ste 800, Memphis, TN 38157

_____ Graceland Rehabilitation and Nursing Center
1250 Farrow Road, Memphis, TN 38116

_____ Perisco A. Wofford, M.D.
4567 Millbranch Road, Memphis, TN 38116

_____ S. Alexander Woods, Jr.
MidSouth Pulmonary Specialists
5050 Poplar Avenue, Ste 800, Memphis, TN 38157

_____ Asif Seed Kazmi, M.D.
Mid-South Renal Clinic PLC
1264 Wesley Drive, Ste 604, Memphis, TN 38116

_____ Syed J. Zaidi, M.D.
MidSouth Pulmonary Specialists
5050 Poplar Avenue, Ste 800, Memphis, TN 38157

_____ Patrick R. Higgins, DO
MidSouth Pulmonary Specialists
5050 Poplar Avenue, Ste 800, Memphis, TN 38157

_____ Ravi K. Madasu, M.D.
1300 Wesley Drive, Memphis, TN 38116

_____ Rajesh Kabra, M.D.
1211 Union Avenue, Memphis, TN 38104

_____ Dwight A. Dishmon, M.D.
Metropolitan Cardiovascular Institute
1975 Nonconnah Blvd., Memphis, TN 38132

_____ Lawrence T. LeBlond, M.D.
3960 New Covington Pike, Memphis, TN 38128

_____ Todd S. Motley, M.D.
1264 Wesley Drive, Memphis, TN 38116

for the purpose of furtherance of litigation and to comply with the Preliminary Notice as required by T.C.A 29-26-121(E).

4.   I understand I have the right to revoke this authorization at any time. I understand if I revoke this authorization I must do so in writing and present my revocation to the health information management department and requesting party. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy. **If I fail to specify an expiration date, event or condition, this authorization will expire in one (1) year. I further authorize the above referenced provider to accept a copy of this Authorization instead of the original of this document, said copy to have full force and effect as though it were the original.**

5.   I understand that authorizing the disclosure of this this health information is voluntary. I can refuse to sign this authorization. I need not sign this form in order to assure treatment. I understand I may inspect or copy the information to be used or disclosed, as provided in CFR 164.524. I understand any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules.

_Panula L. Crenshaw_

**Signature of Patient or Legal Representative**

_3/24/23_

Date

_Pamala L. Crenshaw_ In her capacity as next of kin (daughter) and a legally authorized representative pursuant to T.C.A 63-2-101(B)(3), 205-5-106, and 20-5-107.

**If signed by Legal Representative, Relationship to Patient**

STATE OF TENNESSEE
COUNTY OF SHELBY

     Before me, a Notary Public in the State and County aforesaid, appeared Pamala L. Crenshaw who stated under oath that he/she signed the foregoing instrument as his/her free act and, deed.

My Commission Expires _____

NOTARY PUBLIC

TINA G BRYEANS
STATE OF
TENNESSEE
NOTARY
PUBLIC
SHELBY COUNTY
MY COMMISSION EXPIRES 12-6-2026

Page 3 of 3

35

On July 28, 2023, Ms. Crenshaw filed a "Complaint for Healthcare Liability and Wrongful Death." The complaint listed Methodist Healthcare—Memphis Hospitals, Methodist Le Bonheur Healthcare (d/b/a Methodist Le Bonheur Hospital South a/k/a Methodist South Hospital), Dr. Motley, and Dr. Madasu as the defendants. These parties are the appellees in this matter. Subsequently, on September 29, 2023, Dr. Madasu and Dr. Motley filed a joint motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6), claiming that Ms. Crenshaw failed to substantially comply with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E).[3] The doctors argued that the HIPAA authorization form attached to the pre-suit notice letter did not permit them to obtain Ms. Crenshaw's medical records from the other listed providers. The motion also asserted that, alternatively, if the HIPAA authorization was substantially compliant, the claim was nonetheless time-barred as Ms. Crenshaw did not send the pre-suit notice until after the expiration of the statute of limitations. On October 6, 2023, Methodist Healthcare—Memphis Hospitals and Methodist Le Bonheur Healthcare filed a motion to join the motion to dismiss. They also claimed that: (1) Ms. Crenshaw failed to provide a substantially compliant HIPAA authorization, (2) the authorization omitted a "noticed party," and (3) the statute of limitations expired prior to the sending of the pre-suit notice letters.

The parties briefed the issues, and the motion to dismiss was heard on March 8, 2024. The parties recited their arguments and the trial court stated that it intended to grant the motion to dismiss. This ruling was later memorialized in an order entered on April 9, 2024. In that order, the trial court found that the "[p]laintiff's pre-suit notice [did] not substantially comply with the requirements of Tennessee Code Annotated § 29-26-121 for several reasons." First, the trial court determined that the "unchecked blanks" present on the HIPAA authorization did not properly indicate what healthcare providers were permitted to disclose and receive Ms. Murphy's medical information. Second, the trial court determined that the HIPAA authorization did not substantially comply with the statute because named defendant, Methodist Healthcare—Memphis Hospitals was omitted from the document. The trial court explained that this left Methodist Healthcare—Memphis Hospitals unable to obtain records from the other providers, and likewise, the other providers were unable to obtain records from Methodist Healthcare—Memphis Hospitals. The trial court found that this omission prejudiced each of the defendants, and thus, Ms. Crenshaw's pre-suit notice was not substantially compliant with the statute.

In addition to determining that the HIPAA authorization was not substantially compliant with the terms of Tennessee Code Annotated section 29-26-121, the trial court also found Ms. Crenshaw's complaint was "time barred on several grounds." First, the

---

[3] Tennessee Code Annotated section 29-26-121(a)(2)(E) requires the written pre-suit notice provided to a health care provider to include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice."

trial court determined that because Ms. Crenshaw's pre-suit notice was ineffective, she was not entitled to the 120-day time extension afforded to the statute of limitations by Tennessee Code Annotated section 29-26-121(c). The trial court determined that, without this extension, Ms. Crenshaw did not file her complaint until more than one year after Ms. Murphy passed away. Therefore, the trial court found that the claim was time barred because pre-suit notice was not filed within the one-year statute of limitations period. The trial court stated that the initial treatment date was March 25, 2022, whereas the pre-suit notice was not transmitted until March 29, 2023, more than one year later. Accordingly, the trial court granted the defendants' joint motion to dismiss and dismissed the complaint with prejudice pursuant to Tennessee Rule of Civil Procedure 12.02(6). Subsequently, Ms. Crenshaw filed this appeal.

## II. Issues Presented

Ms. Crenshaw has presented the following issues on appeal which we have slightly reframed:

1. Whether the pre-suit notice sent by Ms. Crenshaw substantially complied with the terms of Tennessee Code Annotated section 29-26-121(a).
2. Whether the omission of Methodist Healthcare—Memphis Hospitals from the HIPAA authorization prejudiced the defendants.
3. If the pre-suit notice complied with the terms of Tennessee Code Annotated section 29-26-121(a), then whether pre-suit notice was properly served within the statute of limitations.

For the following reasons, the judgment of the trial court is affirmed.

## III. Discussion

We first consider whether the pre-suit notice Ms. Crenshaw provided to the defendants substantially complied with the terms of Tennessee Code Annotated section 29-26-121(a). The motion to dismiss asserted that the pre-suit notice Ms. Crenshaw provided was ineffective because it did not contain a valid HIPAA authorization form. Accordingly, the motion asserted that Ms. Crenshaw did not invoke the extension provided in Tennessee Code Annotated section 29-26-121(c) and thus her complaint filed on July 28, 2023, was filed past the expiration of the statute of limitations.

The motion to dismiss was filed pursuant to Tennessee Rule of Civil Procedure 12.02(6). "A Rule 12.02(6) motion is an appropriate means of invoking the statute of limitations as a ground for dismissing a complaint." *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 330 (Tenn. 2020) (citing *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 455 n.11 (Tenn. 2012)). Likewise, "Rule 12.02(6) is the proper vehicle for challenging a plaintiff's compliance with the pre-suit notice requirements of

[Tennessee Code Annotated section] 121." *Id.* (citing *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012)).

However, where a trial court rules on a motion to dismiss but relies on material outside the pleadings, the motion shall be treated as one for summary judgment rather than a motion to dismiss. *Id.* (citing *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 81 n.5 (Tenn. 2018)). Here, Ms. Crenshaw attached several documents and a screen capture to her memorandum opposing the motion to dismiss. These materials were attached to support her claim that the omission of Methodist Healthcare—Memphis Hospitals from the HIPAA authorization did not prejudice the defendants based on the relationship between Methodist Healthcare-Memphis Hospitals and Methodist Le Bonheur Healthcare. It is unclear whether the trial court considered this information when making its ruling. The final order states that the trial court considered the memorandum to which these materials were attached but does not indicate whether the materials themselves were considered. Further, the order does not reference the relationship between the entities or the materials when assessing the argument in its analysis portion.

Regardless, this is immaterial to the issue of whether the blank spaces present on the HIPAA authorization rendered it invalid. Neither party has disputed the facts necessary to resolve whether Ms. Crenshaw's authorization was invalid on this ground and accordingly whether she provided effective pre-suit notice and was thereby entitled to the 120-day extension provided in Tennessee Code Annotated section 29-26-121(c). This issue considers only whether the HIPAA authorization forms submitted by Ms. Crenshaw complied with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E), rather than whether a necessary party was omitted. Thus, as the facts pertaining to this issue are not in dispute, we are tasked with determining only whether Ms. Crenshaw complied with the statutory requirements, an issue of law. Therefore, we review the trial court's decision *de novo* with no presumption of correctness, regardless of whether review is proper as a motion to dismiss or a motion for summary judgment. *See Woodruff by & through Cockrell v. Walker*, 542 S.W.3d 486, 494 (Tenn. Ct. App. 2017).

By way of review, the statute concerning pre-suit notice in health care liability actions provides that:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(2) The notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;

- 8 -

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
(C) The name and address of the attorney sending the notice, if applicable;
(D) A list of the name and address of all providers being sent a notice; and
(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a)(1)-(2). The portion of the pre-suit notice that the trial court determined was deficient was the requirement that a HIPAA compliant medical authorization be included. Tenn. Code Ann. § 29-26-121(a)(2)(E). As our state Supreme Court has previously explained, the purpose of subsection (a)(2)(E) is "to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013). The Court further stated, "less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) [ ] should not derail a healthcare liability claim" and thus determined that substantial compliance is all that is required. *Id.* However, for the authorization to substantially comply with the terms of section 29-26-121(a)(2)(E), it must still "be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Id.* (citing 45 C.F.R. § 164.508(a)(1)).

Here, the trial court determined that the authorizations submitted by Ms. Crenshaw were deficient in part because of the "unchecked blanks with respect to the providers who [were permitted to] obtain and disclose protected health information." The trial court found this error prejudiced the defendants as "they were left to guess who may disclose and/or obtain an individual's protected health information," and also noted the defendants did not have the "burden to correct, complete, or test" the authorization. The trial court found that "[b]ecause of this prejudice to Defendants, Plaintiff's pre-suit notice failed to substantially comply with Tennessee Code Annotated § 29-26-121."

Ms. Crenshaw claims that the document she provided fulfilled all the core elements of a valid authorization as set out in 45 C.F.R. §164.508(c) and thus, she provided the defendants with HIPAA compliant authorizations.[4] Ms. Crenshaw asserts that the

---

[4] 45 C.F.R. § 164.508(c) states:

(c) Implementation specifications: Core elements and requirements—
  (1) Core elements. A valid authorization under this section must contain at least the following elements:
  (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
  (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
  (iii) The name or other specific identification of the person(s), or class of persons,

authorizations could have been mailed to the other providers and this would have resulted in medical records being disclosed. She also contends that it is "absurd to suggest . . . that [the d]efendants had no duty to 'check the block' in order to bring [the] HIPAA authorization into compliance."

As we have previously noted, "HIPAA deems authorizations defective if not filled out completely." *Roberts v. Wellmont Health Sys.*, No. E2017-00845-COA-R9-CV, 2018 WL 3302178, at *4 (Tenn. Ct. App. July 5, 2018) (citing 45 C.F.R. § 164.508(b)(2)). Additionally, we have in the past found that HIPAA authorizations were defective where portions were left blank and thus, pre-suit notice was ineffective. *Roberts*, 2018 WL 3302178 at *4-5 (finding a medical authorization was not substantially compliant with HIPAA where the plaintiff left portions of the authorization blank in keeping with "[l]ocal counsel's practice," and the trial court abused its discretion by taking judicial notice of the practice and equating it to extraordinary cause); *Lawson v. Knoxville Dermatology Grp., P.C.*, 544 S.W.3d 704, 712 (Tenn. Ct. App. 2017) (finding a trial court did not err by dismissing plaintiffs' claims where the name or specific identification of those permitted to receive or disclose records was not present in the pre-suit medical authorization, because the providers "would have [had] no way of knowing that they were the providers for which the authorization was intended or that they were allowed to release medical records"); *J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 513-14 (Tenn. Ct. App. 2016) (finding HIPAA authorizations were "clearly ineffective to allow the Providers to receive medical records from one another" where "[t]he forms merely contained blanks where" they were supposed to disclose the "person(s), or class of persons, that were authorized to disclose protected health information" and the "person(s) or class of persons, to whom a disclosure of information could be made").

The present situation differs somewhat because, rather than an entire section having been left blank as in *J.A.C.*, the authorization had names listed in appropriate locations on the form but placed unmarked blank spaces next to those names. Nevertheless, we have previously found that a plaintiff who left unmarked spaces next to the type of medical records to be disclosed made the authorizations non-compliant and thus pre-suit notice

to whom the covered entity may make the requested use or disclosure.
(iv) A description of each purpose of the requested use or disclosure. The statement "at the request of the individual" is a sufficient description of the purpose when an individual initiates the authorization and does not, or elects not to, provide a statement of the purpose.
(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. The statement "end of the research study," "none," or similar language is sufficient if the authorization is for a use or disclosure of protected health information for research, including for the creation and maintenance of a research database or research repository.
(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

ineffective. *Williams v. Gateway Med. Ctr.*, No. M2018-00939-COA-R3-CV, 2019 WL 1754692, at *5-6 (Tenn. Ct. App. Apr. 18, 2019) (stating that "[plaintiff's] failure to check the requested medical records makes the HIPAA authorization fall short of the standard of substantial compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E)"). Similarly, the unmarked blank spaces in sections one and two of this document render the present authorizations not substantially compliant with HIPAA requirements because they do not properly identify the persons authorized to request or disclose Ms. Murphy's medical records. Therefore, the authorization does not permit the named providers to disclose or receive Ms. Murphy's records. HIPAA authorizations are required to provide "[t]he name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure" as well as the "[t]he name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure." 45 C.F.R. § 164.508(c)(ii)-(iii). By placing blank spaces next to the names of the various providers but failing to mark those spaces, Ms. Crenshaw has failed to indicate which persons and entities listed were permitted to receive or disclose Ms. Murphy's medical records. Logic dictates that those entities permitted to disclose and receive information would be denoted by a mark placed in the blank space beside the entity's respective name, as there is no other reason to have a blank space next to the names. Because the authorization does not contain the identifying information of each person or entity able to receive and disclose Ms. Murphy's medical information, the authorization is incomplete and ineffective. *See* 45 C.F.R. § 164.508(c)(ii)-(iii). While a non-substantive omission could be overlooked and the authorization still be substantially compliant, the failure to properly identify and authorize the persons permitted to disclose and receive records renders the authorization not substantially compliant. *J.A.C.*, 542 S.W.3d at 513-14; *Roberts v. Prill*, No. E2013-02202-COA-R3-CV, 2014 WL 2921930, at *5 (Tenn. Ct. App. June 26, 2014); *Stevens*, 418 S.W.3d at 555.

Critically, Ms. Crenshaw has acknowledged in her brief that these lines are indeed blank spaces. Additionally, section two of this form contains similar blanks placed beside options for the type of information to be disclosed. One of those blank spaces was marked with an "X" to denote that it was the option Ms. Crenshaw was selecting. At oral argument, Ms. Crenshaw's counsel was asked to "reconcile" the existence of the blanks next to the providers and those in section two of the authorization, and responded, "the way I reconcile this is that if you chose to mark one you could, but if you didn't you didn't have to." Nonetheless, there is no logical difference between the blank spaces next to the names of the various providers and the blank spaces present in section two. Thus, there is nothing in the authorization to enable a provider receiving it to discern the identity of the persons or entities permitted to receive or disclose Ms. Murphy's medical records and accordingly, the HIPAA authorization was not substantially compliant and pre-suit notice was therefore ineffective.

Despite the presence of these blank spaces, Ms. Crenshaw contends that the defendants needed to only "draft a letter to any provider that was listed on the HIPAA

- 11 -

authorization and mail [the] same with the authorization to the provider." She further contends that it was "absurd" for the defendants to claim they "had no duty to 'check the block' in order to bring [the] HIPAA authorization into compliance." Essentially, Ms. Crenshaw claims that the defendants should have tested the authorizations by attempting to use them to obtain Ms. Murphy's medical records or should have brought the authorizations into compliance themselves by marking the blank spaces. We disagree.

Ms. Crenshaw's claim that the providers should have tested the forms by attempting to use them is misconceived. Our state Supreme Court has previously stated that "[a]lthough defendants must explain how they were prejudiced by noncompliance, defendants need not 'test' incomplete and facially noncompliant medical authorizations." *Martin*, 600 S.W.3d at 334. As explained above, the authorizations at issue were incomplete as they did not properly identify those providers permitted to disclose and receive Ms. Murphy's medical records. This was apparent on the face of the document, as the unchecked blank spaces rendered the document uninformative and ineffective. Thus, due to the apparent errors present on the authorizations, the providers were not required to test what were incomplete, and facially deficient forms.

Ms. Crenshaw's claim that the defendants should have marked the boxes on the authorizations themselves is similarly misguided. We have previously determined that the burden is on the plaintiff sending pre-suit notice to provide HIPAA compliant authorizations and the providers are not required to take any action to bring the authorizations into compliance. *See J.A.C.*, 542 S.W.3d at 515-16 (stating "[w]e know of no authority permitting the Providers to alter the authorization forms that were already given to them," and noting "[t]he Providers owed no duty to the Plaintiffs to help them achieve" the standards set out in Tennessee Code Annotated section 29-26-121(a)(2)(E)); *Prill*, 2014 WL 2921930 at *6 (rejecting a plaintiff's claim that dismissal for an inadequate form was unnecessary where the plaintiff "intentionally left sections of a [HIPAA authorization] form blank" in anticipation that the providers would fill them in). Likewise, the defendants in this matter had no duty to bring the forms into compliance by marking the blank spaces.

We would also note, for sake of completeness, that the ineffective forms prejudiced the defendants. While "prejudice is not a separate and independent analytical element," it is a still a "consideration relevant to determining whether a plaintiff has substantially complied." *Martin*, 600 S.W.3d at 333. The purpose of pre-suit notice in these matters is "to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." *Stevens*, 418 S.W.3d at 555. Because the defendants were not provided with proper authorization to receive and disclose Ms. Crenshaw's records, they were unable to investigate the matter or prepare a defense. The failure to provide the means to evaluate the merits of a claim constitutes prejudice and thus this consideration supports our determination that the HIPAA authorizations were not valid and Ms. Crenshaw's pre-suit notice was ineffective.

Therefore, we affirm the trial court's determination that Ms. Crenshaw failed to comply with the pre-suit notice requirement set out in Tennessee Code Annotated section 29-26-121(a)(2)(E). Further, because Ms. Crenshaw failed to comply with the terms of this section, her pre-suit notice was ineffective, and thus she was not entitled to the 120-day filing extension provided in Tennessee Code Annotated section 29-26-121(c). Because Ms. Crenshaw was not entitled to this extension, she was subject to the one-year statute of limitations typical to health care liability claims. *See* Tenn. Code Ann. § 29-26-116(a)(1). While a separate issue was raised regarding whether the discovery rule tolled the statute of limitations, Ms. Crenshaw asserts in her brief that, if the rule applied, she "remitted her pre-suit notice within one year of Ms. Murphy's date of death, April 2, 2022, and therefore, the pre-suit notice was timely." Thus, Ms. Crenshaw acknowledges that any tolling pursuant to the discovery rule would have extended the due date to one year from Ms. Murphy's death date of April 2, 2022. Therefore, even assuming that Ms. Crenshaw was correct in her claim that the discovery rule tolled the statute of limitations, the latest date to which this could have tolled the statute of limitations was April 2, 2023. The complaint filed on July 28, 2023, which was outside of the period of the statute of limitations. Because the complaint was not filed within the statute of limitations, it was appropriately dismissed with prejudice. Accordingly, we affirm.

Having determined that Ms. Crenshaw's claim was appropriately dismissed with prejudice, the remaining issues are pretermitted.

## IV. Conclusion

For the foregoing reasons, the ruling of the trial court is affirmed. Costs of this appeal are taxed to the appellant, Pamela L. Crenshaw, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

- 13 -